# EXHIBIT 1



**The University of the State of New York**
The State Education Department
Teacher Tenure Hearing Unit
89 Washington Ave., Room 987 EBA
Albany, New York 12234

Ph:  (518) 473-2829
Fax:  (518) 402-5940

(09/21)

## Rights of Tenured Employees
*(This document only applies to cases where charges were filed on or after July 4, 2015.)*

**This document, while not intended to be exhaustive, describes certain rights of tenured employees in Education Law §3020-a and §3020-b\* proceedings. The information contained in this document should not act as a substitute for the applicable statutes or regulations. Individuals are advised to consult with an attorney as significant adverse consequences may result from these proceedings.**

---

### Special Notice to Tenured Employees of the
### New York City Department of Education

*Many of the provisions in Education Law §3020-a and/or §3020-b, including those described in this document, have been substantially modified by the collective bargaining agreement and subsequent amendments and/or revisions between the United Federation of Teachers ("UFT") and the New York City Department of Education ("NYCDOE"). Education Law §3020(4) permits the NYCDOE to modify the provisions of Education Law §3020-a through the collective bargaining process. If you are a tenured employee of the NYCDOE, you are advised to review your collective bargaining agreement and any amendments and/or revisions thereto to determine whether your rights may deviate from the provisions described below. If you have any questions, you should consult with the UFT and/or an attorney.*

---

Tenured individuals cannot be disciplined or removed from employment except for "just cause" pursuant to Education Law §3020. The procedures for such discipline or removal are set forth in Education Law §3020-a, Education Law §3020-b, and the Commissioner's Regulations 8 NYCRR Ch. II, Sub. C, Part 82-3.

### Charges

1. The employing board of education ("board") must determine, by a majority vote, that probable cause exists to bring a disciplinary proceeding against the tenured employee ("employee").
2. If the board finds probable cause, the tenured employee must be provided with a written statement specifying: a.) the charges in detail; b.) the maximum penalty the board will seek if the employee is found guilty of the charges or that will be imposed if the employee does not request a hearing; and c.) a copy of this form outlining the employee's rights. The charges must be sent by certified or registered mail, return receipt requested or by personal delivery.
3. Charges cannot be brought more than three years after the alleged incompetency or misconduct, except when the charge is of misconduct constituting a crime when committed.

### Suspension Pending Hearing

The employee may be suspended pending a hearing on the charges and the final determination thereof. An employee may be suspended without pay if: a.) the employee has pleaded guilty to or has been convicted of certain felony drug crimes or a felony crime involving the physical abuse of a minor or student; or b.) the employee is charged with misconduct constituting physical or sexual abuse of a student. Employees suspended without pay due to charges constituting physical or sexual abuse of a student, are entitled to an expedited probable cause hearing.

### Termination Without Hearing

The employee shall be terminated without a hearing upon conviction of a sex offense as defined by Education Law §305(7-a)(b)(2). Employees acting as school administrators or supervisors shall be terminated without a hearing upon conviction of defrauding the government as defined by Education Law §305(7-b)(b)(2).

### Hearing Request/Failure to Request

1. Within 10 days of receiving charges, the employee must provide a written request to the clerk or the secretary of the employing board if the employee desires a hearing on the charges.
2. In the written request for hearing, the employee should indicate the name and contact information for the attorney who will represent the employee, if any. Such attorney shall be authorized to receive all correspondence related to the proceeding on the employee's behalf.

## Rights of Tenured Employees (cont.)

3. If the employee does not request a hearing within 10 days of receipt of the charges, the employee shall be deemed to have waived the right to a hearing if there is an unexcused failure to request a hearing.
4. If the employee waives his right to a hearing, the board shall proceed, within fifteen days, by a majority vote to determine the case and fix the penalty, if any, to be imposed.

### Hearing Officer Selection Process

1. Within 3 business days of receipt of the written hearing request, the clerk or secretary of the board shall notify the commissioner of the need for a hearing.
2. Upon receipt of such notification, the commissioner shall request that the American Arbitration Association provide a list of names of individuals to potentially serve as hearing officers along with relevant biographical information concerning the individual. The commissioner shall forthwith send such list to both parties.
3. For charges brought pursuant to §3020-a, the employee and the board must notify the commissioner of their agreed upon hearing officer selection within 15 days of receiving the list of potential hearing officers. If the parties fail to agree or fail to notify the commissioner of their selection within 15 days, the commissioner shall appoint a hearing officer from the list.
4. For charges brought pursuant to §3020-b, where an employee has received two consecutive ineffective ratings, the employee and the board must notify the commissioner of their agreed upon hearing officer selection within 7 days of receiving the list of potential hearing officers. If the parties fail to agree or fail to notify the commissioner of their selection within 7 days, the commissioner shall appoint a hearing officer from the list.
5. For charges brought pursuant to §3020-b, where an employee has received three consecutive ineffective ratings, the commissioner shall appoint a hearing officer from the list.

### Pre-Hearing Conference

1. The pre-hearing conference shall be private.
2. The hearing officer shall hold a pre-hearing conference within 10-15 days of receipt of notice from the commissioner confirming his or her acceptance to serve in such position, in the case of a standard or expedited §3020-a hearing.
3. For expedited §3020-b hearings where the employee has received 2 consecutive ineffective APPR ratings, the hearing officer shall hold a pre-hearing conference within 7 days of receiving notice confirming the hearing officer's agreement to serve.
4. For expedited §3020-b hearings where the employee has received 3 consecutive ineffective APPR ratings, the hearing officer shall hold a pre-hearing conference within 5 days of receiving notice confirming the hearing officer's agreement to serve.
5. At the pre-hearing conference, the hearing officer has the power to: a.) issue subpoenas; b.) hear and decide motions and applications made by either party; c.) set a schedule for full and fair disclosure of witnesses and evidence for both parties; and d.) set the time and place for hearings to ensure that the hearing is conducted within the statutory timelines.
6. Generally, pre-hearing motions must be made on written notice to the hearing officer and adverse party at least 5 days before the pre-hearing conference. Any pre-hearing motions not made as provided for herein shall be deemed waived. However, for expedited hearings, written notice to the adverse party shall be made no later than 2 days before the pre-hearing conference.

### General Hearing Procedures

1. The hearing will be conducted by a single hearing officer.
2. The employee shall have a reasonable opportunity to defend his or herself, including making any additional motions and applications and an opportunity to testify on his or her own behalf, however, the employee shall not be required to testify.
3. Each party has the right to be represented by counsel, and may subpoena and cross-examine witnesses. All testimony shall be under oath.
4. An accurate record of the hearing shall be kept at the expense of the commissioner. Upon request, the employee is entitled to a copy of the record without charge.
5. If the hearing officer needs to be replaced and the parties fail to notify the commissioner of their mutually agreed upon replacement within 2 business days, the commissioner shall select the replacement.

## Rights of Tenured Employees (cont.)

6. At the conclusion of the testimony, the hearing officer may allow the parties to submit memoranda of law; however, such submission may not delay the date that the hearing officer is required to render a decision.
7. In general, hearings must be completed within 60 days of the pre-hearing conference. Please see below for the time periods applicable to particular expedited hearings.
8. In general, all evidence must be submitted within 125 days of the filing of charges and no additional evidence shall be accepted after such time, absent extraordinary circumstances beyond control of the parties.

### Expedited Hearing Based on Revocation of Certification

1. If the charges are based upon revocation of the employee's certification, an expedited hearing must be held.
2. The hearing shall commence within 7 days of the pre-hearing conference and is limited to one day. The hearing may not be adjourned except upon request of a party and only for good cause as determined by the hearing officer.

### Expedited Hearing Based on Charges Constituting Physical or Sexual Abuse of Student

1. If the charges are based upon allegations of physical or sexual abuse of a student, an expedited hearing must be held.
2. The hearing shall commence within seven days after the pre-hearing conference and shall be completed within sixty days after the pre-hearing conference. Adjournments may not be granted that would extend the hearing beyond 60 days, except where the hearing officer determines that the delay is both substantially beyond control of the requesting party and an injustice would result if the adjournment were not granted.

### Expedited Hearing Based on Two Consecutive Ineffective APPR Ratings

1. The Board may bring charges alleging incompetence based upon two consecutive ineffective APPR ratings, in which case an expedited hearing would be held, but the board is not required to bring charges.
2. The hearing must begin within 7 days of the pre-hearing conference and be completed within 90 days following the date that the employee requested the hearing. Adjournments may not be granted that would extend the hearing beyond 90 days, except where the hearing officer determines that the delay is both substantially beyond control of the requesting party and an injustice would result if the adjournment were not granted.
3. The charges must allege that the board has developed and substantially implemented a teacher or principal improvement plan for the employee following the first evaluation in which the employee was rated ineffective and the immediately preceding evaluation if the employee was rated developing.

### Expedited Hearing Based on Three Consecutive Ineffective APPR Ratings

1. The Board shall bring charges alleging incompetence where any teacher or principal receives three consecutive ineffective APPR ratings, in which case an expedited hearing must be held.
2. The hearing must commence within 5 days of the pre-hearing conference and be completed within 30 days following the date that the employee requested the hearing. Adjournments may not be granted that would extend the hearing beyond 30 days, except where the hearing officer determines that the delay is both substantially beyond control of the requesting party and an injustice would result if the adjournment were not granted.

### Decision

1. With the exception of expedited hearings, the hearing officer shall render a written decision within 30 days of the last hearing date.
2. For expedited hearings, the hearing officer shall render a written decision within 10 days of the last hearing date.
3. The commissioner must immediately forward copies of the decision to the parties.
4. The hearing officer shall render a written decision that includes findings of fact and conclusions, based upon the findings of fact, as to each charge and shall state the penalty, or other action, if any, against the employee on each charge.

## Rights of Tenured Employees *(cont.)*

5. In those cases where a penalty is imposed, such penalty may be a written reprimand, a fine, a suspension for a fixed time without pay, or dismissal.

6. In determining penalty, the hearing officer shall give serious consideration to the penalty recommended by the board, and if the hearing officer imposes a different penalty, then the hearing officer must indicate the reasons for the alternate penalty based upon the record.

7. Within 15 days of the receipt of the hearing officer's decision, the board shall implement the decision. If the employee is acquitted of the charges, he or she must be restored to his or her position with full pay for any period of suspension without pay and the charges expunged from the employment record.

8. The hearing officer shall indicate in the decision whether any of the charges brought by the board were frivolous as defined by the Civil Practice Law and Rules §8303-a. If the hearing officer finds that all of the charges were frivolous, the hearing officer shall order the board to reimburse both the employee and the department reasonable costs that were incurred. If the hearing officer finds that some, but not all of the charges were frivolous, the hearing officer shall order the board to reimburse a portion of the reasonable costs incurred to the department and the employee.

### Appeal

1. Not later than 10 days after receipt of the hearing officer's decision, either the employee or the board may make an application to the New York State Supreme Court to vacate or modify the hearing officer's decision pursuant to Civil Practice Law and Rules §7511.

2. The filing of the pendency of an appeal shall not delay the implementation of the hearing officer's decision.

### Restoration of Rights

If an employee who was convicted of a felony crime as specified in Education Law §3020-a(2)(b) has his or her conviction reversed, the employee, upon application, shall be entitled to have his or her pay and other emoluments restored, for the period of time extending from the date of suspension to the date of the decision.

---

*Pursuant to §§ 30-2.14 and 30-3.17 of the Rules of the Board of Regents, educators whose Annual Professional Performance Reviews (APPRs) include results from the State's growth model (i.e., teachers of grades 4-8 ELA and Mathematics; principals of buildings including those grade levels; and principals of buildings including all of grades 9-12) or any other measures based on the grades 3-8 ELA and Mathematics State assessments will receive both an "original" evaluation and a "transition" evaluation. This process will continue through the 2018-19 school year, during the time that the State transitions to new ELA and Mathematics learning standards and assessments and during that time the State will explore potential revisions to the evaluation framework. The "original" evaluation will include the results of the State's growth model and any other measures based on the grades 3-8 ELA and Mathematics State assessments. This evaluation is provided for advisory purposes only and cannot be used for employment related decisions. Affected educators will also receive a "transition" evaluation that excludes the above referenced measures. During the transition period, only this transition score and rating will be used for purposes of employment decisions, including tenure determinations and for purposes of proceedings under Education Law §§3020-a and 3020-b.

# EXHIBIT 2

## Your COVID-19 Vaccine Religious Exemption Application - Determination

solas_donotreply@schools.nyc.gov <solas_donotreply@schools.nyc.gov>
Wed 9/22/2021 7:43 PM
To: Baker Dianne (12X245) <DBaker5@schools.nyc.gov>

09/22/2021

Case#: A75783
File# 2284954
EMP ID: 810218

Dear DIANNE BAKER-PACIUS,

We have reviewed your application and supporting documentation for a religious exemption from the DOE COVID-19 vaccine mandate. Your application has failed to meet the criteria for a religious based accommodation. Per the Order of the Commissioner of Health, unvaccinated employees cannot work in a Department of Education (DOE) building or other site with contact with DOE students, employees, or families without posing a direct threat to health and safety. We cannot offer another worksite as an accommodation as that would impose an undue hardship (i.e. more than a minimal burden) on the DOE and its operations.

This application was reviewed in accordance with applicable law as well as the Arbitration Award in the matter of your union and the Board of Education regarding the vaccine mandate.

Under the terms of the Arbitration Award, you may appeal this denial to an independent arbitrator. If you wish to appeal, you must do so within one school day of this notice by logging into SOLAS https://dhrnycaps.nycenet.edu/SOLAS and using the option "I would like to APPEAL". As part of the appeal, you may submit additional documentation and also provide a reason for the appeal.

Sincerely,


HR Connect
Medical, Leaves, and Records Administration

Please do not reply to this message via e-mail. This email address is automated.

Ref Number : GX5918247 N3418 COVID-19_VAX_ReligiousExempt_GenDenial

# EXHIBIT 2a

 HR CONNECT **Self-Service Online Leave Application System**

Welcome, BAKER-PACIUS, DIANNE  *(Emp ID: 810218)*

Help ❓



**Information and Application Process**

Guidelines:

This COVID-19 Vaccine Related Exemption and Accommodation application is for a) religious and medical exemption requests to the mandatory vaccination policy, and (b) medical accommodation requests where an employee is unable to mount an immune response to COVID-19 due to preexisting immune conditions.

All applications that require supporting documentation must include the documentation a[...]

Information regarding an individual's disability will be kept confidential to the extent requ[...]

Applications including supporting documentation will be reviewed by appropriate staff incl[...] ment (Medical).

> **More Infomation**   ✖
>
> Employee must include documentation such as a letter from the employee and/or religious official supporting the application for an exemption to the COVID-19 vaccine mandate based on sincerely held religious beliefs.

**NOTIFICATION OF A DETERMINATION**
The determination of eligibility for an exemption or accommodation will be emailed to the [...]

**GENERAL INFORMATION**
Questions about the accommodation process may be directed to ODA at ODA@schools.ny[...] rocedures for filing discrimination complaints, can be found in Chancellor's Regulation A-830.

| Checklist | | | | |
|---|---|---|---|---|
| **Tasks** | **Responsibility** | **Status** | **Date Completed** | **More Information** |
| 📄 Self Service Online Leave Application (In Progress now) | Applicant | In Progress | | ⓘ |
| ✕ Document(s) explaining exemption request such as from the employee and/or from a religious official [Required]   [Upload File(s)...] | Applicant | Not Received | | ⓘ |

Click **Upload File(s)** to upload supporting documents.

If you have read and understood the information above and wish to submit an online application, please click 'Continue'. You can click the 'Back' button to go back to the previous page if you need to make changes to your information.

[Back]    [Continue]    [Start Over]    [Exit]

# EXHIBIT 2b

To Whom It May Concern:

My name is Dianne Christene Baker-Pacius and I am the Yoga and Mindfulness Instructor at Hugo Newman College Preparatory School in Harlem, New York. I am writing this letter to respectfully request a religious exemption for vaccination within the New York City Department of Education. I am providing my personal history and my deeply held religious beliefs as they relate to religion and my relationship with God. As such, because my beliefs are immensely personal, I respectfully request that this letter be received and treated with the highest level of confidentiality.

I am a veteran New York City public school educator with eighteen years of experience. From the beginning of my career, my colleagues admired my management skills and ability to connect with my students. I enjoy supporting students with their academic and social emotional development. During my career, I spearheaded programs for overaged IEP middle school students to provide them with opportunities for growth in self esteem and academic achievement. In addition, I created passion projects and Project Based Learning curriculum to focus on student interests, while maintaining state standards. I have taught students in general education and integrated co-teaching classes. I have also taught all subjects as an elementary educator and focused on Humanities and English Language Arts as a middle school educator.

In 2017, I completed my yoga certification through the Breathe for Change program with the support of my then principal. As a certified yoga instructor, I incorporated mindfulness activities into my daily interactions with students and staff. We engaged in asanas, meditations, and breathwork. For the 2021-2022 academic year, my school created a Yoga and Mindfulness Instructor position based on the work that I had been doing with the school community and I started the year creating the first ever yoga studio for my school community. I taught students from preschool through eighth grade. While in this role, my intention was to implement yoga and mindfulness practices to support students and staff with successfully assimilating into full time in person learning. The pandemic has created a series of personal and social traumas that may have made being in school challenging for children and adults alike and I wanted to ensure that a safe and courageous space was created for them to get the social emotional support that they may need. Though short lived, this particular position was one of the highlights of my career.

I would like to offer you a window into my upbringing, which influenced the development of my personal beliefs as they relate to religion and my relationship with God.

I was born first generation American to Jamaican parents. I grew up in an often tumultuously violent household due to my father's alcoholic tendencies. It was my mother who instilled in her eight children the importance of faith and religion. My siblings and I regularly attended Sunday school and Baptist church services along with having Christian Bible study at home with our mom. My sister and I were part of the church choir and we travelled throughout New York City to perform for other churches and listen to a variety of services. On Saturday mornings we would clean the house to the tunes of Christian music and children's Bible stories. At the time, I

didn't know the impact that the devotional faith my mother instilled in me would have on the rest of my life and my ever evolving sincerely held religious beliefs.

Moving from childhood to adulthood, I learned the power of spiritual understanding and growth, which has been the foundation of my current religious beliefs. Growing up, my parents had authority over the decisions that were made for my body, and upon entering the school system, chose to vaccinate me and school aged siblings. As a child, I had no say in what was put into my body and involuntarily abided by my parents' wishes. As I moved into adolescence and adulthood, I took sovereignty over my belief systems and my body.

In high school, I had a significant turning point-I discovered that I was obese. It may sound strange, but I didn't see myself as overweight as I didn't resemble the media based images of what obese people were to look like. One day, my mother was called into school and she and I were directed to go to the nurse's office where I was weighed and told that I was 196lbs-at the age of 15 and with a height of 5'6. I was mortified and knew that I had to make a change. It was then I realized the importance of understanding what I put into my body. I navigated food and my spiritual understandings at that time by attempting to understand why my body seemed to betray me and wanting answers. I attempted to speak with my mom and siblings, but came to no conclusions, so I went within. I talked with God about my life and why I was who I was, in the situation that I was in. I was often frightened, sad, and quite lonely as a child/ teenager, but sought answers and connection to God. I began to read the Bible on my own, wanting to get insight and clarity on life.

When I moved into my twenties, I chose to get baptized, a decision that was very powerful for me. It was powerful because my mom didn't convince me to do it, but God directed me to that decision, letting me know that I could hear and abide by His still voice. As I continued on my journey, my sister invited me to join her in services at a nondenominational church. My mind and spirit were nourished in ways that I had never imagined. This experience gave me the support, outlook, and understanding my foundational faith needed.

Through the process of communion with God and connection to my body, I have grown to believe, and know, that my body belongs to God. I keep my body pure, holy, sacred, and clean and as an adult, I do not inject anything impure into it. My blood is related to my body and soul, therefore knowing that vaccines contain blood goes against my belief of maintaining my body as pure and sacred. Partaking of the vaccine would infringe on my moral conscience, thereby impacting my path with God. In Leviticus 17 verse 12 it states "Therefore I say to the Israelites, 'None of you may eat blood, nor may any foreigner residing among you eat blood", which lets me know that to have blood injected into my body is against God's law and directions for my life. My blood is my God given life force- "Because the life of every creature is its blood; anyone who eats it must be cut off" (Leviticus 17:14) and I will not be cut off from God.

As I read the Bible, I know that what I believe is true as it states: "Therefore, I urge you brothers and sisters, in view of God's mercy, to offer your bodies as a living sacrifice, holy and pleasing to God-this is your true and proper worship. Do not conform to the pattern of this world, but be

transformed by the renewing of your mind. Then you will be able to test and approve what God's will is-his good, pleasing, and perfect will" (Romans 12:1-2). Through my connection with God, I know that through my personal worship and my moral conscience, I am to maintain bodily integrity and sanctity as a directive from my Creator. Therefore, my deeply held religious beliefs are such that I cannot take any vaccines as they are deemed to interfere with my belief that my body is a living and holy sacrifice that is to always be pleasing to God.

While God continued to show me my path and I slipped as a mere human being, God gave me signs, like developing womb health issues, to follow His Divine law. The Bible states "And without faith it is impossible to please God, because anyone who comes to him must believe that he exists and that he rewards those who earnestly seek him" (Hebrews 11:6). I have been on this path for an exceptionally long time and intend to maintain and grow on this journey with God as I continue to seek His guidance in all things.

In conclusion, as stated throughout this letter, my deeply held religious beliefs guide my daily decisions and I know that God is directing me to refrain from vaccinations as they would go against my moral convictions. I humbly ask that my religious exemption based on my sincerely held beliefs presented in this letter be approved so that I may continue to be a contribution to Hugo Newman College Preparatory School and the NYC DOE. Thank you for your time.

Kindest Regards,

Signature:

# EXHIBIT 3

## Re: Grievances

---

From:  Dianne Baker (dianneb_28@yahoo.com)

To:      vcambronneuft@gmail.com

Date:   Wednesday, November 17, 2021 at 07:52 PM EST

---

Sounds good.


Sent from Yahoo Mail for iPhone


On Wednesday, November 17, 2021, 12:16 PM, Velda Cambronne <vcambronneuft@gmail.com> wrote:

Good afternoon ,

Yes we can meet Thursday afternoon. I will call you then.

On Tue, Nov 16, 2021 at 2:50 PM Dianne Baker <dianneb_28@yahoo.com> wrote:

Hello Ms. Cambronne,

Thank you for your response.  Can we meet on Thursday at 1:35PM? If so, please let me know if you'd prefer a phone call or a ZOOM meeting.  Thanks again.

Regards,
Mrs. Baker-Pacius

-"The most precious gift we can offer others is our
presence.  When mindfulness embraces those we love,
they will bloom like flowers."-Thich Nhat Hanh


On Tuesday, November 16, 2021, 12:20:54 PM EST, Velda Cambronne <vcambronneuft@gmail.com> wrote:


Good Morning Ms Baker,

Thank you for reaching out. Union does not  believe grievance will be successful because it is a Department of Health mandate due to a pandemic. Understanding your situation , we( Union) are not certain the grievance will be successful but I am more than willing to help file a grievance on your behalf. Please let me know if and when you would like me to file a grievance. To address the other items such as copy of file, you may request to have a copy of file with Administration. You will have to arrange how you will view and make a copy of the

file with the administration. The additional matter of the 8 CAR days will be addressed in the grievance. Union is not certain of what the outcome will be but if and when you are ready I can assist.

UFT Prep Times
Tuesday 12:48 - 1:35pm
Wednesday 12:48 -1:35pm
Thursday 1:35 - 2:20pm
Friday 12:48pm - 2:20pm

On Mon, Nov 15, 2021 at 12:44 PM Dianne Baker <dianneb_28@yahoo.com> wrote:

Hello Ms. Cambronne,

I have two grievances, so far, that I intend to file and I am requesting your support . Please advise me on the next steps within 48 hours so I can follow the appropriate UFT steps. If you find that I should go directly to the UFT District Office, please let me know immediately or don't respond within the next 48 hours and I will direct this to the UFT office for the support needed.

The first grievance is against the New York City Department of Education for stopping my pay without "right to due process". These actions appear rather aggressive compared to teachers who have had Education Law 3020a-charges, ex: abuse of a child, and expelled to the "Rubber Room" or "Mini-Rubber Room", where these individuals are still being paid during the entirety of their investigations and due process, until the Arbitrator's decisions, yet the teachers who are not complying to the vaccine mandate, from the start, were immediately punished. It appears that the New York City Department of Education has the intention to fire those who do not comply, which also implies an intention to file Education Law 3020a-charges, but they are not informing New York City Department of Education Staff of this through the appropriate actions mandated by the law. This action of withdrawing pay is coercive on the part of the New York City Department of Education, as well as punishment for not following the vaccine mandate, prior to due process/ Education Law 3020a-procedures. The New York City Department of Education is using its power to fire non-compliant employees, as effectively as possible. This results in retaliation and harassment against innocent and committed New York City Department of Education employees.

The second grievance is for eight unauthorized absences, so far, which have been put into my Payroll Portal CAR system that I can't explain, especially since these days are while I am on unpaid leave. According to the Chancellor's Regulations, these unauthorized absences can be used as a sole basis for the New York City Department of Education to file Education Law 3020a charges against me. The collective bargaining agreement doesn't align with this idea of "unauthorized absences" which can result in New York City Department of Education employees losing their job, and licenses with the city, for non compliance. The New York City Department of Education, alongside the United Federation of Teachers, arbitration agreement does not protect ALL of its members and leaves many vulnerable to being fired without due process, resulting in a plethora of monumental hardships.

This experience has been exceptionally unfortunate and the New York City Department of Education continuing to not abide by laws and regulations that were put in place to protect those who have given their lives to serve children and the education system is causing reprehensible damage.

Also, I have emailed Ms. Nelson twice about getting a copy of my file from PS/IS 180 and she has not responded.

Again, I am requesting support from the UFT in this matter of completing and submitting these grievances that I, and so many, are dealing with.

Sincerely,

Dianne Baker-Pacius

# EXHIBIT 3a



**HUGO NEWMAN COLLEGE PREPARATORY SCHOOL**
**P.S/ I.S. 180**

370 West 120th Street
New York, New York 10027
Telephone: (212) 678-2849
Facsimile:   (212) 665-1572

Jeneca Parker, Principal

Kristen Marren, Assistant Principal                    Maureen Sullivan, Assistant Principal

November 29, 2021

VIA EMAIL

Dianne Baker-Pacius
Teacher
PS/IS 180 Hugo Newman
File #2284954

Dear Ms. Baker-Pacius,

You filed a grievance on November 18, 2021 claiming your rights pursuant to Article 20 of the collective bargaining agreement were violated when you were suspended and moved to unpaid status following the vaccine mandate. I held a videoconference meeting with you and Velda Cambronne, your UFT Chapter Leader, on Wednesday, November 24th to discuss your grievance.

I deny your grievance because you failed to demonstrate that the collective bargaining was violated.

Sincerely,

Jeneca Parker

Principal
PS/IS 180

# EXHIBIT 3b

## Re: Case #M73656-Step 2 Grievance Denial Appeal

From:   Dianne Baker (dianneb_28@yahoo.com)

To:     SZalkin@uft.org

Date:   Wednesday, December 29, 2021 at 02:59 PM EST

Hello Mr. Zalkin,

I hope this message finds you well. Thank you for reaching out to me to discuss my case. I am best reached via email, so please direct all communication through email-it would be much appreciated.

As per my initial email, please provide an explanation of the denial of my grievance to step 2 regarding:

1. eight unauthorized absences put into my CAR while on unpaid leave

2. stopping my pay without due process.

Thank you again and I look forward to your reply.

Be Well,
Mrs. Baker-Pacius

Sent from Yahoo Mail for iPhone

On Tuesday, December 28, 2021, 11:48 AM, Saul Zalkin <SZalkin@uft.org> wrote:

Dear Ms. Baker,

I just tried to call you but was unable to leave a message because the mailbox is full.
Please call me at 212-598-9507 so we can discuss the case.
This week I am in the office through Thursday from 10-4:30.
Starting January 3, 2022 my normal hours resume and I am in the office daily from 3 – 6.

*Saul L. Zalkin*
Grievance Department

**From:** Dianne Baker <dianneb_28@yahoo.com>
**Sent:** Monday, December 20, 2021 3:20 PM

**To:** Saul Zalkin <SZalkin@uft.org>
**Subject:** Case #M73656-Step 2 Grievance Denial Appeal

**Re: Case #M73656**

**School:  M180**

520 West 183rd Street Apt 54A
New York NY 10033
646-369-6792

Hello Mr. Zalkin,

I hope this message finds you well.  My name is Dianne Baker-Pacius and I am a veteran New York City Department of Education Employee.  On December 15, 2021 I received a denial letter to Step 2 of my grievance regarding eight unauthorized absences that were put into my CAR while on leave without pay and stopping my pay without my right to due process.

I am requesting a full explanation of why my grievance was denied to be pursued to step 2.

I intend to appeal this decision.

Thank you.

Regards,

Dianne Baker-Pacius



Our kids deserve smaller class sizes.
Sign and share our petition.

The views, opinions, and judgments expressed in this message are solely those of the author. The message contents have not been reviewed or approved by the UFT.

# EXHIBIT 3c

Please find my reasons why my grievance should go to step 2:

Every UFT represented employee has the right to file a step 1 grievance. However, the Union, not the employee, files the step 2 grievance with the Chancellor and the Union, not the employee, files salary and leave grievances with the Executive Director of Human Resources. The Union only pursues these grievances if they have merit. Your grievance claims a contractual violation for being placed on an unpaid leave of absence.

The New York City Department of Health ordered that all Department of Education staff must be vaccinated. After a Municipal Labor Committee lawsuit joined by the UFT failed to stop the mandate, the UFT filed for impact bargaining. The resulting arbitration decision modifies the CBA. If the DOE is complying with the award there is nothing to grieve.

Subsequently, the arbitration decision was modified by a court order pertaining to those who appealed DoE's decision not to grant religious exemptions. Those people now have the right to appeal to a city panel. The order stated that those on unpaid leave that are granted a religious exemption will be awarded back pay for the entire time on unpaid leave.

As a tenured teacher, I have the right to a 3020A hearing to be subsequently fired from the DOE. I have not formally been brought up on any charges and have been without pay since October 2021. On Pg 14 of the arbitration agreement, it states "During such leave without pay, employees shall continue to be eligible for health insurance. As with other DOE leaves without pay, employees are prohibited from gainful employment during leave period". The DOE has failed to offer members gainful employment opportunities during this new type of involuntary unpaid leave and the UFT has failed to protect members' gainful employment opportunities during this new type of involuntary leave. The current term prohibiting gainful employment has created financial hardships, social emotional stress, and irreparable harm such as newly developed health conditions during this involuntary unpaid leave without gainful employment opportunities to members and members' families. During this time, my husband and I have had to go through our savings to maintain basic living expenses. Our credit card debt consumption has increased by 30%. In addition, we are now considering leaving our home to live with my mother in order to relinquish finances lost during this unfortunate time. My levels of stress have increased, indicated by sleepless nights, anxiety, panic attacks, enhanced pulsatile tinnitus, and depression. This time has been exceptionally challenging to navigate and has created undue, and quite frankly unnecessary, hardship for those involved. This new type of unpaid leave I have been placed on is very different from all types of voluntary leaves without pay defined in the contract. All other leaves without pay in the contract are voluntary. However, this new type of unpaid leave I have been placed on is involuntary. Therefore, I should be allowed to have gainful employment to support my family. The UFT has failed to protect my gainful employment rights.

There are a few ongoing contractual violations in the DOE vaccine mandate roll out and its exemption application process. The UFT has failed to enforce those rights to protect members. In article 2 FAIR PRACTICES pg4 of the contract, it says "The Board agrees to continue its policy of not discriminating against any employees on the basis of race, creed (religion), color, sex,

marital status, sexual orientation, handicapping condition or age". I have been discriminated against on my religion by the DOE because the DOE has wrongfully denied my religious exemption and wrongfully placed me on unpaid leave status. My contractual rights have been violated and the Union has duties to represent me fairly in the process. All three standards in Section I.C in the arbitration agreement are violating existing laws, such as the Free Exercise Clause in the 1st Amendment, Title VII of the Civil Rights Act of 1964, the New York State and New York City Human Rights Laws. And those standards in Section I.C in the arbitration agreement have been disregarded by the court order issued on 11/15 regarding Michael Kane v. the DOE case & Matthew Keil v. the DOE case. In the determination letter I received from the DOE on 09/22/2021, it says "unvaccinated employees cannot work in a school building without posing a direct threat to health and safety." Covid-19 vaccines don't prevent infections and transmissions. Vaccinated DOE employees can still get infected and spread the virus, as has been demonstrated by classroom and school closings and the recent discussions to implement remote learning . Labeling unvaccinated employees like myself as "a direct threat to health and safety" is a discrimination against my vaccine status. This narrative will cause discrimination, segregation, harassment and irreparable harm and injuries on unvaccinated employees like me.

In reference to having absences occurring on October 4 through October 14, 2021 coded as unauthorized on payroll portal, those absences are coded in EIS (the DOE payroll system) as Vaccine Non-Compliance. According to the arbitration they cannot be cited for disciplinary purposes.

In Section 2.b under Unauthorized Absences of the Chancellor Regulation issued on 6/17/2021 and in Section 2.b of the Chancellor Regulation issued on 11/18/2021, both sections state unauthorized absence and payroll deduction "shall not preclude any disciplinary action which the Chancellor, responsible superintendent or executive director deems appropriate, including preferral of charges of unauthorized absence from duty." I discovered that I had eight unauthorized absences in my CAR via the DOE payroll portal on 11/17/21 and contacted the payroll secretary, Ms. Nelson of Hugo Newman College Preparatory School regarding this matter. She informed me that it was automatically generated. It is not appropriate for the DOE to bring a charge on me using unauthorized absence because I have been on authorized absence. On 10/2/21 the Division of Human Capital sent me a notice of leave without pay which gave me their authorization for me to be on unpaid leave although I am willing and able to report to work. Therefore, my absences should be considered as authorized absences and I shall not be disciplined or discriminated against. In Article 16 Section I of the teacher contract it says "No employee shall be disciplined … for taking an approved unpaid leave." Therefore, I shall not be disciplined for being placed on an **approved** unpaid leave.

Based on the above, being placed on an unpaid leave due to vaccine non-compliance is not a contractual violation. Therefore, the Union will not be taking the case to the Chancellor's level or to the Executive Director of Human Resources at this time. You have the right to appeal the Union's decision but we want to make sure you understand the Union's rationale for not pursuing your grievance.

# EXHIBIT 4

**St. Francis Hospital,**
**The Heart Center®**
Catholic Health Services
At the heart of health

*Catholic Health Physician Partners*
*Internal Medicine Associates*
*146A Manetto Hill Road, Suite 205*
*Plainview, NY 11803*
*Tel  (516) 302-8530*
*Fax (516) 838-6164*

9/15/21

Christopher Garry,
date of birth 10/6/63,
has had multiple pulmonary
embolism's over his
lifetime. Christopher
was advised to NOT
have the COVID vaccine
because of the risk of
another pulmonary embolism.

Sincerely,

Jane F. Serie, M.D.
146A Manetto Hill Road, Suite 205
Plainview, NY 11803
Tel: (516) 302-8530
Fax: (516) 838-6164

# EXHIBIT 4a

**Sent:** Tuesday, September 21, 2021 07:13 PM
**Email To:** cgarry@schools.nyc.gov
**Email CC:**
**Email BCC:** HRConnectLeaves@schools.nyc.gov
**Subject:** Your COVID-19 Vaccine Medical Exemption Application – Determination

09/20/2021

Case#: A75695
File# 0677758
EMP ID: 834161

Dear CHRISTOPHE GARRY,

This is to advise you that your request for a Medical Exemption to the COVID-19 Vaccine Mandate has been denied for the following reason(s):

- Denial Reason: Other

- Additional Information: Attn. MD: PMHx of P.E. is not a contraindication to COVID vaccine (as per CDC website)

Your application was reviewed in accordance with the ADA, the New York State and City Human Rights Laws, as well as the Arbitration Award in the matter of your union and the Board of Education regarding the vaccine mandate.

Under the terms of the Arbitration Award, you may appeal this denial to an independent arbitrator. If you wish to appeal, you must do so within one school day of this notice by logging into SOLAS https://dhrnycaps.nycenet.edu/SOLAS and selecting the option: "I would like to APPEAL". As part of the appeal, you may submit additional medical documentation and must provide a reason for the appeal.

Sincerely,

*HR Connect*
Medical, Leaves, and Records Administration

Please do not reply to this message via e-mail. This email address is automated.

Ref Number: GX5903216 N3416 COVID-19_VAX_MedExemption_Denial (All Unions)

# EXHIBIT 5

FILED: QUEENS COUNTY CLERK 03/28/2023 11:40 PM
NYSCEF DOC. NO. 6

INDEX NO. 706616/2023
RECEIVED NYSCEF: 03/28/2023

# EXHIBIT 5

FILED:  QUEENS COUNTY CLERK 03/28/2023 10:03 PM    INDEX NO. 705635/2023
NYSCEF DOC. NO. 5    RECEIVED NYSCEF: 03/28/2023

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION: FOURTH DEPARTMENT

‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒X

MEDICAL PROFESSIONALS FOR INFORMED
CONSENT, et al.

                   *Appellees-Petitioners*

                                   **Index No. CA 23-00161**

           -against-

MARY T. BASSETT, et al,

                   *Appellants-Respondents*

‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒ X

| | |
|---|---|
| STATE OF CONNECTICUT | ) |
| | ) ss.: TRUMBULL |
| COUNTY OF FAIRFIELD | ) |

HARVEY A. RISCH, MD, PHD, being duly sworn, deposes and says:

    1.    I make this affidavit in support of Appellee-Petitioners' opposition to Appellants' motion for stay.

    2.    I am familiar with the facts set forth herein based on my review of the affidavits and evidence submitted with Appellants' motion for a stay, hundreds of scientific studies and research findings, on my own extensive research and on my personal knowledge and the expertise gained through my career as a university professor, research scientist and epidemiologist. Some of the credentials and experience that qualify me to give this opinion are listed below.

FILED: QUEENS COUNTY CLERK 03/28/2023 03:03 PM
NYSCEF DOC. NO. 5

INDEX NO. 705615/2023
RECEIVED NYSCEF: 03/28/2023

3.      I am Professor Emeritus of Epidemiology at Yale School of Public Health, a practicing academic epidemiologist with more than 40 years of experience in epidemiologic methods, both in research and teaching.  My research has included both infectious and noninfectious factors.

4.      Over this career, I have taught introductory, intermediate, and advanced epidemiologic research methods to public health graduate students, postdoctoral fellows, hospital residents, and junior faculty members. I have also taught coursework on pharmacoepidemiology, which is the epidemiologic study of vaccines, medications, and medical devices, and their antecedent conditions and reasons for use.

5.      I have published some 400 peer-reviewed original research papers in well-regarded scientific journals and have an h-index of 105, with more than 48,000 publication citations to-date.

6.      I have served as grant reviewer or chair on two dozen grant review panels, most of which were at NIH, and served as peer reviewer for 60 scientific and medical journals.

7.       I have been Associate Editor of the *Journal of the National Cancer Institute* since 2000, Member of the Board of Editors of the *American Journal of Epidemiology* from 2014-2020, and Editor of the *International Journal of Cancer* since 2008.

8.      I am an elected member of the Connecticut Academy of Science and Engineering and, based on my strong epidemiologic methods experience and PhD work in infectious epidemic models, was selected to be a member of the Academy committee that was organized in 2020 to formulate plans for helping the reopening of the state of Connecticut after its lockdown ended.

9.      I thus began researching COVID-19 epidemiology, prevention, treatment, and vaccination with my participation in the Reopening Committee.  In the subsequent 2.5 years, I extensively studied medical and epidemiologic factors related to the COVID-19 virus, the vaccines, and the disease in the US and internationally.

2

FILED: QUEENS COUNTY CLERK 03/28/2023 10:03 PM     INDEX NO. 705635/2023
NYSCEF DOC. NO. 5                                    RECEIVED NYSCEF: 03/28/2023

Dated: February 1, 2023

Harvey A. Risch

Affirmed before me this 1st day of February 2023.

Notary Public

SOPHIA NADHAZI
Notary Public, State of Connecticut
My Commission Expires Dec. 31, 2023

18

# EXHIBIT 6



September 10, 2021

<u>Via E-Mail Only</u>
Renee Campion, Commissioner
Steven H. Banks, Esq.
New York City Office of Labor Relations
The Office of Labor Relations
22 Cortlandt Street, 14th Floor
New York, NY 10007

Alan M. Klinger, Esq.
Stroock & Stroock & Lavan, L.L.P.
180 Maiden Lane, 33rd Floor
New York, NY 10038

Beth Norton, Esq.
Michael Mulgrew, President
United Federation of Teachers
52 Broadway, 14th Floor
New York, NY 10004

**Re:**    **Board of Education of the City School District of the City of New York and**
    **United Federation of Teachers, Local 2, AFT, AFL-CIO**
    **(Impact Bargaining)**

Dear Counsel:

Enclosed please find my Award in the above referenced matter.

Thank you.

Sincerely,

Martin F. Scheinman

MFS/sk
BOE.UFT.Impact Bargaining.awd

322 Main Street ◆ Port Washington, NY 11050 ◆ 516.944.1700 ◆ fax: 516.944.1771 ◆ www.ScheinmanNeutrals.com

```
------------------------------------ X
In the Matter of the Arbitration
                                     X
          between
                                     X
BOARD OF EDUCATION OF THE CITY                    Re:  Impact Bargaining
SCHOOL DISTRICT OF THE CITY OF       X
NEW YORK
                                     X
          "Department"
                                     X
          -and-
                                     X
UNITED FEDERATION OF TEACHERS,
LOCAL 2, AFT, AFL-CIO                X

          "Union"                    X

------------------------------------ X
```

**APPEARANCES**

    **For the Department**
     Renee Campion, Commissioner of Labor Relations
     Steven H. Banks, Esq., First Deputy Commissioner
     and General Counsel of Labor Relations


    **For the Union**
    STROOCK & STROOCK & LAVAN, L.L.P.
     Alan M. Klinger, Esq.


    Beth Norton, Esq., UFT General Counsel
    Michael Mulgrew, UFT President


**BEFORE**: Martin F. Scheinman, Esq., Arbitrator

## BACKGROUND

The Union ("Union" or "UFT") protests the Department of Education's ("Department" or "DOE") failure to reach agreement on the impact of its decision mandating all employees working in Department buildings show proof they started the Covid-19 vaccination protocols by September 27, 2021. The Union contends the Department failed to adequately provide, among other things, for those instances where employees have proof of a serious medical condition making the vaccine a danger to their health, as well as for employees who have a legitimate religious objection to vaccines.

Most of the basic facts are not in dispute.

For those in the New York City ("NYC" or "City") metropolitan area, we are now in the 18th month of the Covid-19 pandemic. During that time, we have seen substantial illness and loss of life. There have been periods of significant improvement and hope, but sadly, we have seen resurgence with the Delta variant. Throughout this period, NYC and its municipal unions have worked collaboratively to provide needed services for the City's 8.8 million residents in as safe an environment as possible. Yet, municipal employees have often borne great risk. The Department and the UFT are no exception. The DOE and the UFT immediately moved to remote instruction and then later a hybrid model of both in-person and remote learning for the 2020-2021 school year. Educators at all levels strove to deliver the best experience possible under strained circumstances. For this

2

coming school year, both the DOE and the UFT have endeavored to return, as much as possible, to in-person learning.    They have developed protocols regarding masking and distancing to effectuate a safe environment for the City's students and educators.

To this end, the Delta resurgence has complicated matters.    In recognition of increased risk, there have been various policies implemented at City agencies and other municipal entities. Mayor de Blasio in July 2021 announced a "Vaccine-or-Test" mandate which essentially requires the City workforce, including the UFT's educators, either to be vaccinated or undergo weekly testing for the Covid-19 virus effective September 13, 2021.

Most relevant to this matter, on August 23, 2021, the Mayor and the NYC Commissioner of Health and Mental Hygiene, David A. Chokshi, MD, announced a new policy for those workforces in NYC DOE buildings. Those employees would be subject to a "Vaccine Only" mandate.    That is, such employees would need to show by September 27, 2021, they had at least started the vaccination protocol or would not be allowed onto DOE premises, would not be paid for work and would be at risk of loss of job and benefits.    This mandate was reflected in an Order of Commissioner Chokshi, dated August 24, 2021.    That Order, by its terms, did not expressly provide for exceptions or accommodations for those with medical contraindications to vaccination or sincerely-held religious objections to inoculation. Nor did it address matters of due process with regard to job and benefits protection.

3

The UFT promptly sought to bargain the impact and implementation of the Vaccine Only mandate. A number of discussions were had by the parties but important matters remained unresolved.

On September 1, 2021, the UFT filed a Declaration of Impasse with the Public Employment Relations Board ("PERB") as to material matters. The City/DOE did not challenge the statement of impasse and PERB appointed me to mediate the matters. Given the exigencies of the imminent start of the school year and the coming of the September 27, 2021, mandate, together with the importance of the issues involved to the workforce, mediations sessions were held immediately on September 2, 3, 4 and 5, 2021, with some days having multiple sessions. Progress was made, and certain tentative understandings were reached, but significant matters remained unresolved. By agreement of the parties, the process moved to arbitration. They asked I serve as arbitrator.[1]

Arbitration sessions were held on September 6 and 7, 2021. During the course of the hearings, both sides were given full opportunity to introduce evidence and argument in support of their respective positions. They did so. Both parties made strenuous and impassioned arguments reflecting their viewpoints on this entire issue.

During the course of these hearings, I made various interim rulings concerning the impact of the "Vaccine Only" mandate. I then

---

[1] My jurisdiction is limited to the issues raised during impact bargaining and not with regard to the decision to issue the underlying "Vaccine Only" order.

4

directed the parties to draft language reflecting those rulings. Even though I am very familiar with the language of the current Collective Bargaining Agreement, as well as the parties' relationship since I am a member of their permanent arbitration panel and have served as a fact-finder and mediator during several rounds of bargaining, I concluded the parties are more familiar with Department policy and how leave and entitlements have been administered in accordance with prior agreements. As such, my rulings reflect both the understandings reached during the negotiations prior to mediation, those reached in the mediation process and the parties' agreed upon language in response to my rulings. All are included, herein.

I commend the parties for their seriousness of purpose and diligence in addressing these complicated matters. The UFT made clear it supports vaccination efforts and has encouraged its members to be vaccinated. Nonetheless, as a Union, it owes a duty to its members to ensure their rights are protected. The City/DOE demonstrated recognition of the importance of these issues, particularly with regard to employees' legitimate medical or religious claims. I appreciate both parties' efforts in meeting the tight timeline we have faced and the professionalism they demonstrated serving the citizens of the City and what the million plus students deserved. They have invested immense effort to insure such a serious issue was litigated in such a thoughtful way.

Yet, in the end, it falls to me, as Arbitrator, to arrive at a fair resolution of the matters at hand.

This matter is one of the most urgent events I have been involved with in my forty (40) plus years as a neutral. The parties recognized the complexity of the issues before me, as well as the magnitude of the work that lies ahead to bring this conflict to completion in a timely manner. For this reason, they understood and accepted the scope and complexity of this dispute could not be handled by me alone. They agreed my colleagues at Scheinman Arbitration and Mediation Services ("SAMS") would also be involved.

I want to thank my colleagues at SAMS, especially Barry J. Peek, for their efforts and commitment to implementing the processes to resolve this matter. This undertaking could not be accomplished by any single arbitrator.

## Opinion

After having carefully considered the record evidence, and after having the parties respond to countless inquiries. I have requested to permit me to make a final determination, I make the rulings set forth below. While some of the language has been drafted, initially, by the parties in response to my rulings, in the end the language set forth, herein, is mine alone. I hereby issue the following Award:

## I. Exemption and Accommodation Requests & Appeal Process

As an alternative to any statutory reasonable accommodation

6

process, the City, the Board of Education of the City School District for the City of New York (the "DOE"), and the United Federation of Teachers, Local 2, AFT, AFL-CIO (the "UFT), (collectively the "Parties") shall be subject to the following Expedited Review Process to be implemented immediately for full-time staff, H Bank and non-pedagogical employees who work a regular schedule of twenty (20) hours per week or more inclusive of lunch, including but not limited to Occupational Therapists and Physical Therapists, and Adult Education teachers who work a regular schedule of twenty (20) or more hours per week. This process shall only apply to (a) religious and medical exemption requests to the mandatory vaccination policy, and (b) medical accommodation requests where an employee is unable to mount an immune response to COVID-19 due to preexisting immune conditions and the requested accommodation is that the employee not appear at school. This process shall be in place for the 2021-2022 school year and shall only be extended by mutual agreement of the Parties.

Any requests to be considered as part of this process must be submitted via the SOLAS system no later than Monday, September 20, 2021, by 5:00 p.m.

   A. Full Medical Exemptions to the vaccine mandate shall only be considered where an employee has a documented contraindication such that an employee cannot receive any of the three (3) authorized vaccines (Pfizer, Moderna, J&J)— with contraindications delineated in CDC clinical

7

considerations for COVID-19 vaccination.  Note that a prior immediate allergic reaction to one (1) type of vaccine will be a precaution for the other types of vaccines, and may require consultation with an allergist.

B. Temporary Medical Exemptions to the vaccine mandate shall only be based on the following valid reasons to defer or delay COVID-19 vaccination for some period:

o Within the isolation period after a COVID-19 infection;

o Within ninety (90) days of monoclonal antibody treatment of COVID-19;

o Treatments for  conditions as delineated in CDC clinical considerations, with understanding CDC guidance can be updated to include new considerations over time, and/or determined by a treating physician with a valid medical license responsible for the immunosuppressive therapy, including full and appropriate documentation that may warrant temporary medical exemption for some period of time because of active therapy or treatment (e.g., stem cell transplant, CAR T-cell therapy) that would temporarily interfere with the patient's ability to respond adequately to vaccination;

o Pericarditis or myocarditis not associated with COVID-19 vaccination or pericarditis or myocarditis associated with COVID-19 vaccination.

8

Length of delay for these conditions may vary, and the employee must get vaccinated after that period unless satisfying the criteria for a Full Medical Exemption described, above.

C. Religious exemptions for an employee to not adhere to the mandatory vaccination policy must be documented in writing by a religious official (e.g., clergy). Requests shall be denied where the leader of the religious organization has spoken publicly in favor of the vaccine, where the documentation is readily available (e.g., from an online source), or where the objection is personal, political, or philosophical in nature. Exemption requests shall be considered for recognized and established religious organizations (e.g., Christian Scientists).

D. There are cases in which, despite an individual having sought and received the full course of the vaccination, he or she is unable to mount an immune response to COVID-19 due to preexisting immune conditions. In these circumstances, each individual case shall be reviewed for potential accommodation. Medical accommodation requests must be documented in writing by a medical doctor.

E. The initial determination of eligibility for an exemption or accommodation shall be made by staff in the Division of Human Capital in the Office of Medical, Leaves and Benefits; the Office of Equal Opportunity; and Office of Employee

9

Relations. These determinations shall be made in writing no later than Thursday, September 23, 2021, and, if denied, shall include a reason for the denial.

F. If the employee wishes to appeal a determination under the identified criteria, such appeal shall be made in SOLAS to the DOE within one (1) school day of the DOE's issuance of the initial eligibility determination.    The request for appeal shall include the reason for the appeal and any additional documentation. Following the filing of the appeal, any supplemental documentation may be submitted by the employee to the Scheinman Arbitration and Mediation Services ("SAMS") within forty eight (48) hours after the filing of the appeal. If the stated reason for denial of a medical exemption or accommodation request is insufficient documentation, the employee may request from the arbitrator and, upon good cause shown, the arbitrator may grant an extension beyond forty eight (48) hours and permit the use of CAR days after September 27, 2021, for the employee to gather the appropriate medical documentation before the appeal is deemed submitted for determination.

G. A panel of arbitrators identified by SAMS shall hear these appeals, and may request the employee or the DOE submit additional documentation. The assigned arbitrator may also request information from City and/or DOE Doctors as part of the review of the appeal documentation.    The assigned

10

arbitrator, at his or her discretion, shall either issue a decision on the appeal based on the documents submitted or hold an expedited (virtual) factual hearing. If the arbitrator requests a factual hearing, the employee may elect to have a union representative present but neither party shall be required to be represented by an attorney at the hearing. The expedited hearing shall be held via Zoom telecommunication and shall consist of brief opening statements, questions from the arbitrator, and brief closing statements. Cross examination shall not be permitted. Any documentation submitted at the arbitrator's request shall be provided to the DOE at least one (1) business day before the hearing or the issuance of the written decision without hearing.

H. Appeal decisions shall be issued to the employee and the DOE no later than Saturday September 25, 2021. Appeal decisions shall be expedited without full Opinion, and final and binding.

I. While an appeal is pending, the exemption shall be assumed granted and the individual shall remain on payroll consistent with Section K below. However, if a larger number of employees than anticipated have a pending appeal as of September 27, 2021, as determined by SAMS, SAMS may award different interim relief consistent with the parties' intent. Those employees who are vaccinated and have applied for an

11

accommodation shall have the ability to use CAR days while their application and appeal are pending. Should the appeal be granted, these employees shall be reimbursed any CAR days used retroactive to the date of their initial application.

J. The DOE shall cover all arbitration costs from SAMS under this process. To the extent the arbitrator requests additional medical documentation or information from the DOE, or consultation with City and/or DOE Doctors, arranging and paying for such documentation and/or consultation shall be the responsibility of the DOE.

K. An employee who is granted a medical or religious exemption or a medical accommodation under this process and within the specific criteria identified above shall be permitted the opportunity to remain on payroll, but in no event required/permitted to enter a school building while unvaccinated, as long as the vaccine mandate is in effect. Such employees may be assigned to work outside of a school building (e.g., at DOE administrative offices) to perform academic or administrative functions as determined by the DOE while the exemption and/or accommodation is in place. For those with underlying medical issues granted an accommodation under Section I(D), the DOE will make best efforts to ensure the alternate work setting is appropriate for the employee's medical needs. The DOE shall make best efforts to make these assignments within the same borough as

12

the employee's current school, to the extent a sufficient number of assignments exist in the borough. Employees so assigned shall be required to submit to COVID testing twice per week for the duration of the assignment.

L. The process set forth, herein, shall constitute the exclusive and complete administrative process for the review and determination of requests for religious and medical exemptions to the mandatory vaccination policy and accommodation requests where the requested accommodation is the employee not appear at school. The process shall be deemed complete and final upon the issuance of an appeal decision. Should either party have reason to believe the process set forth, herein, is not being implemented in good faith, it may bring a claim directly to SAMS for expedited resolution.

## II.  **Leave**

A. Any unvaccinated employee who has not requested an exemption pursuant to Section 1, or who has requested an exemption which has been denied, may be placed by the DOE on leave without pay effective September 28, 2021, or upon denial of appeal, whichever is later, through November 30, 2021. Such leave may be unilaterally imposed by the DOE and may be extended at the request of the employee consistent with Section III(B), below. Placement on leave without pay for these reasons shall not be considered a disciplinary action for any purpose.

B. Except as otherwise noted, herein, this leave shall be treated consistent with other unpaid leaves at the DOE for all purposes.

C. During such leave without pay, employees shall continue to be eligible for health insurance. As with other DOE leaves without pay, employees are prohibited from engaging in gainful employment during the leave period.

D. Employees who become vaccinated while on such leave without pay and provide appropriate documentation to the DOE prior to November 30, 2021, shall have a right of return to the same school as soon as is practicable but in no case more than one (1) week following notice and submission of documentation to the DOE.

E. Pregnancy/Parental Leave

    i.   Any soon-to-be birth mother who starts the third trimester of pregnancy on or before September 27, 2021, (e.g. has a due date no later than December 27, 2021), may commence UFT Parental Leave prior to the child's birth date, but not before September 27, 2021.

   ii.   No documentation shall be necessary for the early use of Parental Leave, other than a doctor's written assertion the employee is in her third trimester as of September 27, 2021.

  iii.   Eligible employees who choose to start Parental Leave prior to the child's birth date, shall be required to first use CAR days until either: 1) they exhaust CAR/sick days,

14

at which point the Parental Leave shall begin, or 2) they give birth, at which point they shall be treated as an approved Parental Leave applicant for all purposes, including their prerogative to use additional CAR days prior to the commencement of Parental Leave.

iv. Eligible employees who have a pregnancy disability or maternity disability outside of the regular maternity period may, in accordance with existing rules, borrow CAR/sick days and use a Grace Period. This eligibility to borrow CAR/sick days does not apply to employees during the regular maternity recovery period if they have opted to use Parental Leave.

v. In the event an eligible employee exhausts CAR/sick days and parental leave prior to giving birth, the employee shall be placed on a leave without pay, but with medical benefits at least until the birth of the child. As applicable, unvaccinated employees may be placed in the leave as delineated in Section II(A).

vi. If not otherwise covered by existing Family Medical Leave Act ("FMLA") or leave eligibility, an employee who takes Parental Leave before the birth of the child shall be eligible to be on an unpaid leave with medical benefits for the duration of the maternity recovery period (i.e., six weeks after birth or eight weeks after a birth via C-Section)

15

vii.    All other eligibility and use rules regarding UFT Parental Leave as well as FMLA remain in place.

## III. Separation

A. During the period of September, 28, 2021, through October 29, 2021, any employee who is on leave without pay due to vaccination status may opt to separate from the DOE. In order to separate under this Section and receive the commensurate benefits, an employee must file a form created by the DOE which includes a waiver of the employee's rights to challenge the employee's involuntary resignation, including, but not limited to, through a contractual or statutory disciplinary process. If an employee opts to separate consistent with this Section, the employee shall be eligible to be reimbursed for unused CAR days on a one (1) for one (1) basis at the rate of 1/200th of the employee's salary at departure per day, up to 100 days, to be paid following the employee's separation with documentation including the general waiver and release. Employees who elect this option shall be deemed to have resigned involuntarily effective on the date contained in the general waiver as determined by the DOE, for non-disciplinary reasons.    An employee who separates under this Section shall continue to be eligible for health insurance through September 5, 2022, unless they are eligible for health insurance from another source (e.g., a spouse's coverage or another job).

16

B. During the period of November 1, 2021, through November 30, 2021, any employee who is on leave without pay due to vaccination status may alternately opt to extend the leave through September 5, 2022. In order to extend this leave pursuant to this Section, and continue to receive the commensurate benefits, an employee must file a form created by the DOE which includes a waiver of the employee's rights to challenge the employee's voluntary resignation, including, but not limited to, through a contractual or statutory disciplinary process. Employees who select this option shall continue to be eligible for health insurance through September 5, 2022. Employees who comply with the health order and who seek to return from this leave, and so inform the DOE before September 5, 2022, shall have a right to return to the same school as soon as is practicable but in no case more than two (2) weeks following notice to the DOE. Existing rules regarding notice of leave intention and rights to apply for other leaves still apply. Employees who have not returned by September 5, 2022, shall be deemed to have voluntarily resigned.

C. Beginning December 1, 2021, the DOE shall seek to unilaterally separate employees who have not opted into separation under Sections III(A) and III(B). Except for the express provisions

17

contained, herein, all parties retain all legal rights at all times relevant, herein.

September 10 , 2021.

_____
Martin F. Scheinman, Esq.
Arbitrator

STATE OF NEW YORK      )
                       )   ss.:
COUNTY OF NASSAU       )

I, MARTIN F. SCHEINMAN, ESQ., do hereby affirm upon my oath as Arbitrator that I am the individual described herein and who executed this instrument, which is my Award.

September 10 , 2021.

_____
Martin F. Scheinman, Esq.
Arbitrator

DC5,UFT.Impact Bargaining.awd

18

# EXHIBIT 7

**Notice of Leave Without Pay - PLEASE READ**

NYCDOE <noreply@schools.nyc.gov>
Sat 10/2/2021 3:10 PM

To: _____@schools.nyc.gov>

 **Department of Education**

Dear _____,

You are receiving this message because **you are being placed on a Leave Without Pay (LWOP) because you are not in compliance with the DOE's** <u>COVID-19 Vaccine Mandate</u>**.** If you are a substitute or in certain titles you have been placed in another inactive status, not a LWOP. **This means you must <u>not</u> report to your work or school site beginning Monday, October 4th.**

While you are on Leave Without Pay (LWOP), you:

- Cannot work and will not receive compensation, but you will continue your medical benefits
- Cannot use annual leave, CAR or sick time
- Cannot enter your work or school site
- Cannot reach out to students or families

In order to return from LWOP status, you must complete two steps using the **<u>DOE Vaccination Portal</u>**

1. Upload proof that you have received your first dose of a COVID-19 vaccine. **Proof of COVID-19 Vaccine can be an image of your vaccination card, NYS Excelsior Pass, or another government record**
2. E-sign the attestation stating that you are willing to return to your worksite within seven calendar days of submission.

Once you have completed these two steps, your HR Director and supervisor will also be notified and will work with you to plan your return date.

**If you have been vaccinated this weekend and upload this information by Monday morning, you may report to work as usual on Monday, October 4th, and you will be put back on active status.**

On Monday, October 4th, if you have an acceptable proof of vaccination (e.g., vaccination card, NY State Excelsior pass, or other government record) but have not been able to upload to the **<u>DOE Vaccination Portal</u>**, you may show your proof to the School Safety Agent and/or Principal (or designee) at the door.  You will be allowed in the building, and you must immediately upload proof of vaccination to the Vaccination Portal and confirm that you would like to return to work in order to ensure there is no break in payroll.

If you encounter technical issues accessing the Vaccination Portal, please contact the DOE Help Desk by <u>opening a ticket online</u> or calling 718-935-5100. If you need support uploading your proof of vaccination, please contact your principal or HRD who can do so on your behalf.

Please be advised that if you do not intend to return to the DOE after October 1, 2021, you will need to return all DOE property, including computers, IDs, blackberries, and keys, immediately.  Failure to return any DOE property that has been assigned to you will delay the processing of your final payment and any payout of leave time

may select (in SOLAS) special separation or leave options per the arbitration award:

- **Separation with benefits** (available in SOLAS as of Monday, October 4): Employees choosing to separate under this option:
    - **Must share their intention to separate via SOLAS by October 29, 2021.**
    - Will be required to waive their rights to challenge the involuntary resignation, including, but not limited to, through a contractual or statutory disciplinary process
    - Will be eligible to be reimbursed for unused CAR/sick leave on a one-for-one basis at the rate of 1/200th of the employee's salary at departure per day, up to 100 days, to be paid out following the employee's separation
    - Will be eligible to maintain health insurance through September 5, 2022, unless they have health insurance available from another source.
- **Extend the leave without pay due to vaccination status through September 5, 2022** (available in SOLAS as of Monday, November 1 through November 30, 2021):
    - Employees choosing this option will also be required to waive their rights to challenge their involuntary resignation, including, but not limited to, through a contractual or statutory discipline process
    - They will remain eligible for health insurance through September 5, 2022
    - Employees who have not returned by September 5, 2022 shall be deemed to have voluntarily resigned
- Beginning December 1, 2021, the DOE will seek to unilaterally separate employees who have not selected one of the options above or otherwise separated service.

For more information about where to get vaccinated, visit vaccinefinder.nyc.gov or call 877-VAX-4-NYC. For the latest COVID-19 staffing updates, please visit the Coronavirus Staff Update InfoHub page.

Sincerely,

NYCDOE Division of Human Capital

# EXHIBIT 8

11/28/22, 8:18



**Department of Education**

November 18, 2022

Brooklyn, New York

Title: Teacher/
Applicant ID:
PRP#:

Dear Ms. .

Your name was recently submitted to the Office of Personnel Investigation (OPI) for security clearance to work with the NYC Department of Education (DOE) or a DOE contracted vendor. According to our records, your services with the DOE were terminated due to noncompliance with the vaccine mandate and you currently appear out of compliance. The purpose of our contact was to request information so that your application could be processed for security clearance. Requests were sent to you at the email address you provided                @aol.com' on November 10, 2022 and November 16, 2022. You were given a deadline to provide the requested information. To date, we have not received the required information.

Due to your non-compliance, you are unable to work with the DOE or any DOE contracted vendors. As such, your case has been administratively closed, and no security clearance determination has been made. Please note that at this time, you do not have security clearance to work with the DOE and/or one of its contracted vendors.

Sincerely, .

The Office of Personnel Investigation
Division of Human Resources
NYC Department of Education

cc: File

From: kking@uft.org >
Date: Thu, Apr 28, 2022 at 12:50 PM
Subject: response from UFT regarding the problem code
>

**Karen King** (KKing@uft.org)To:you Details
Hello,

Technically you should receive charges. At this time, however, the DOE is not going to issue 3020-a charges because they do not believe they have to do so. We have filed a legal challenge to protect your due process rights, should the judge decide in our favor, you will be entitled to a hearing at that time.

The problem code was added to all employees who were placed on 2VM vaccine mandate leave. It was placed there the day you went on the leave. DOE's central offices placed this code on all employees who went on the leave. It will be removed once you are eligible to return to work.

**Karen King**
*Administrative Assistant to the Assistant Secretary &*
*Director of Personnel, Payroll, and Special Projects*
United Federation of Teachers
50 Broadway, 13th Floor
New York, N.Y. 10004
*kking@uft.org*

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

MICHAEL KANE, et al,

                              Plaintiffs,

             – against –                        21-CV-7863 (VEC) (Lead Case)

BILL DE BLASIO, et al.,

                              Defendants.

------------------------------------------------------------------ x

MATTHEW KEIL, et al.

                             Plaintiffs,

             – against –                      21-CV-8773 (VEC)

THE CITY OF NEW YORK, et al.,

                              Defendants

------------------------------------------------------------------ x

       **MALLORY O. SULLIVAN**, under penalty of perjury, declares pursuant to 28 U.S.C. §
1746, that the following statements are true and correct:

               1.          I am the Deputy Director of the Office of Employee Relations
("OER") at the New York City Department of Education ("DOE"), and I have held this position
since November 2014. Prior to serving in my current position, I was an Agency Attorney with
the DOE's Office of the General Counsel for approximately four years.

               2.          I submit this declaration to provide information about DOE's
employment record system in response to certain allegations regarding "problem codes" as set
forth in the Declaration of Natasha Solon dated May 20, 2022 (ECF dkt. 162). I am familiar

with the facts set forth herein based on my personal knowledge as well as discussions with other DOE employees and the review of DOE records.

3.        In my role as Deputy Director, I oversee the DOE's Office of Personnel Investigation ("OPI"), which is responsible for, among other things, screening and conducting background investigations for all candidates for employment with the DOE or with vendors under contract with the DOE and monitoring employee and vendor employee security clearances. As a part of these processes, OPI uses internal system codes.

4.        The DOE maintains electronic employment records and employee service histories for DOE employees ("DOE employment records"). DOE employment records are kept within a system called NYCAPS, which is operated by the City of New York for all DOE and City employees. DOE employment records are only visible to the DOE and reflect employees' dates of employment, titles held, and various changes in active employment status.

5.        In addition, DOE has codes within NYCAPS designed to engender special attention should an individual seek employment, re-employment, or change titles with the DOE. Such a code might be used where, for example, an employee left DOE employment with a performance issue, had a nomination for employment rescinded, or was the subject of an arrest. This is designed to ensure that prior to any new employment or new title within DOE, the employee's application undergoes further review by OPI. These types of codes have been colloquially referred to as "problem codes." These codes are only visible to internal DOE Human Resources staff, and the underlying basis for such code is only accessible by OPI.

8.        Separately, DOE implemented an internal NYCAPS code specific to the Commissioner of Health Order mandating vaccination of DOE employees ("Vaccination Mandate"). This code remains visible to only OPI staff to ensure vaccination status was

reviewed prior to any return of an employee placed on a leave without pay due to non-compliance with the Vaccination Mandate. A DOE employee would not have a "problem code" in their service history as a result of any non-compliance with the Vaccination Mandate.

9.    In this instant case, Natasha Solon was placed on leave without pay due to non-compliance with the Vaccination Mandate, and returned to service once compliance with the Vaccination Mandate was confirmed. At no point did Natasha Solon have a "problem code" in her service history as a result of her non-compliance with the Vaccination Mandate nor was there ever any code in her service history arising out of her vaccination status visible to anyone outside of OPI.

Dated:    May 27, 2022
          New York, New York

                                    By: _____
                                        Mallory O. Sullivan
                                        Deputy Director
                                        Office of Employee Relations

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
                                                             :
MICHAEL KANE, et al.,                                        :
                                                             :
                                      Plaintiffs,            :
                                                             :
                 - against -                                 :   Case No. 21-cv-7863 (VEC) (Lead)
                                                             :
BILL DE BLASIO, et al.,                                      :
                                                             :
                                      Defendants.            :
-------------------------------------------------------------X
                                                             :
MATTHEW KEIL, et al.                                         :
                                                             :
                                      Plaintiffs,            :
                                                             :
                 - against -                                 :   Case No. 21-cv-8773 (VEC)
                                                             :
THE CITY OF NEW YORK, et al.,                                :
                                                             :
                                      Defendants.            :
-------------------------------------------------------------X

**DECLARATION OF BARRY BLACK IN FURTHER SUPPORT OF**
**PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

**BARRY BLACK**, an attorney admitted to practice before this Court, declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true:

1. I am an attorney for Plaintiffs and fully familiar with the facts and circumstances of this case.

2. I respectfully submit this declaration in response to Mallory O. Sullivan's Declaration.

3. Attached as Exhibit 1 is a true and correct copy of a declaration from Betsy Combier.

4. Attached as Exhibit 2 is a true and correct copy of a declaration from Plaintiff Dennis Strk.

5. Attached as Exhibit 3 is a true and correct copy of a declaration from proposed class member Patricia Catoire.

### First False Assertion in Sullivan Declaration

6. The Sullivan Declaration asserts that there are two different kinds of codes in the NYCAPS system: a "problem code" and some other unnamed code, the "problem code" indicating anything from a performance issue to criminal activity, and the unspecified code flagging the absence of vaccination. Glaringly absent from Sullivan's recitation is how these codes appear to the reader. That is because there is no difference; they are one and the same.

7. Indeed, DOE Human Resources Director Eric Amato explicitly stated in an email to UFT Assistant Secretary Michael Sill and General Counsel Beth Norton that a "[p]roblem code was added to all employees who were placed on 2VM vaccine mandate leave. Our central offices placed this code on all employees who went on the leave." Ex. 1, ¶ 13, Ex. A.

8. Moreover, terminated Plaintiffs had a problem code plainly visible in their payroll portal, indicated by a **"Problem PR"** notation in their salary history tab. Ex. 2, ¶ 5, Ex. A; Ex. 1 ¶ 10 (DOE's "problem code" is also referred to as a "pr" code).

1

### Second False Assertion in Sullivan Declaration

9.  The Sullivan Declaration falsely posits that the no one outside DOE's Office of Personnel Investigations has access to the problem code. To the contrary, any non-DOE school or official that wants to learn whether a former DOE employee has a problem code in his or her personnel file can easily do so in a variety of ways. For example, non-DOE schools which offer DOE-funded positions have access to the DOE's payment portal, Galaxy, which allows them to see problem codes; indeed Plaintiffs present evidence of at least 15 former DOE employees who were not hired at non-DOE schools because the non-DOE schools discovered their problem codes. Ex. 1, ¶¶ 14-18. Simple phone calls work as well: a former UFT Special Representative explained that she used to "receive[] countless calls every week asking . . . if there was a problem code on an employee's personnel file" and that her UFT colleague next door would then check her computer and "tell [her] 'yes' or 'no' within a minute." Ex. 1, ¶ 8. In some instances, DOE representatives disclosed the problem codes to prospective employers from non-DOE schools calling to verify employment. Ex. 1, ¶ 19. In one instance, a third-party HR representative at Bright Start Learning Center of NYC—a non-DOE school operating pursuant to NYS Department of Health Bureau of Early Intervention directives—informed a former DOE employee that she had had been flagged as "ineligible" in her personnel file. Ex. 3, ¶¶ 8-9, 13.

10. It is noteworthy that such evidence was already in the record before Defendants filed the Sullivan declaration, but Defendants did not even attempt to discredit it. ECF No. 162 ¶¶ 11-13 (Plaintiff Solon was told by an official at non-DOE school that it could not hire her because of the problem code in her personnel file).

### Further Evidence of Irreparable Harm

11. Plaintiffs' irreparable harm did not cease with their terminations. Instead, the problem codes in their files make them unemployable indefinitely at both DOE and non-DOE schools.

12. The UFT has stated unequivocally that such problem codes "will be removed once [they] are eligible to return to work." Ex. 1, ¶ 13, Ex. A.

13. Thus, Plaintiffs face ongoing coercion to violate their religious beliefs and become vaccinated, in order to become employable – and remove the scarlet letter from their permanent records.

14. The Court is reminded that Plaintiff Solon's problem code was removed within 24 hours of her getting vaccinated. ECF No. 162 ¶ 18.

Dated: New York, New York

      June 3, 2022

                            Respecrfully submitted,

                            Barry Black
                            Nelson Madden Black LLP
                            *Attorney for Plaintiffs*
                            475 Park Avenue South, Suite 2800
                            New York, NY 10016
                            (212) 382-4303

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X :

MICHAEL KANE, et al.,                                          :

                                    Plaintiffs,               :

                  - against -                                 :       Case No.  21-cv-7863 (VEC) (Lead)

DE BLASIO et al.,                                             :

                                    Defendants.               :
------------------------------------------------------------X :

MATTHEW KEIL, et al.                                          :

                                    Plaintiffs,               :

                  - against -                                 :       Case No.  21-cv-8773 (VEC)

THE CITY OF NEW YORK et al.,          .                       :

                                    Defendants.               :
------------------------------------------------------------X

## DECLARATION OF BETSY COMBIER

Betsy Combier declares as follows, pursuant to 28 U.S.C. § 1746:

1.      My name is Betsy Combier and I am the President and lead paralegal of Advocatz, a
        paralegal consulting business for people who need a partner as they go through the
        Courts, grievances, or life problems.

2.      I respectfully submit this Declaration in support of Plaintiffs' Motion for a
        Preliminary Injunction.

3.      I know the facts stated herein to be true based upon my personal knowledge and
        based upon my review of the files of hundreds of my clients whom I have represented
        in proceedings with the New York City Department of Education ("DOE"), except

1

for statements which are made on information and belief and, as to those, I verily believe them.

4.    I have a degree in Child Psychology from Northwestern University, an MA Certificate from the Johns Hopkins' School for Advanced International Studies where my specialization was the Soviet Military Industrial Complex, an MPS in Interactive Telecommunications from New York University, and a Certificate in Art and Drama Therapy from The New School.

5.    I have successfully assisted parents, children, and caregivers with the educational needs of their children, and I have been advocating for the due process rights of Union members—in particular, members of the AFL-CIO, United Federation of Teachers ("UFT") and Local 32 B&J—for 17 years.

6.    From 2007-2010, I worked as Special Representative to the UFT where my job was to oversee the eight re-assignment centers in the NYC DOE, first in all boroughs, and then at the Manhattan, Brooklyn, and Bronx locations.

7.    I am very familiar with the arbitration hearing process, set forth in New York Education Law § 3020-a, having assisted teachers in approximately 300 3020-a hearings since 2003.

8.    I am also very familiar with "problem codes"—the flag the DOE puts in the personnel file of employees to indicate that they should not be hired due to unexplained misconduct of some kind. Employees can be flagged for everything from receiving an unsatisfactory or ineffective rating to engaging in egregious criminal acts. During the three years I worked at the UFT headquarters, I received countless calls every week

2

asking me if there was a problem code on an employee's personnel file. When that happened, I would simply ask the person next door to my office, another UFT Special Representative, whether she could check her computer, and she would tell me "yes" or "no" within a minute.

9.      When the DOE puts a problem code in the employee's personnel file, it also places a flag on the employee's fingerprints, which is then sent to the national databases at both the Federal Bureau of Investigation and the State Division of Criminal Justice Services.

10.      I have represented more than 15 DOE employees before the DOE's Office of Personnel Investigation in proceedings in which they requested the removal of their problem codes. The flag has several names such as "problem code," "pr" code, "pc" code, "ineligible," and "no hire/inquiry" code; however, all refer to a salary block, whatever title it is given.

11.      I have helped approximately 20 DOE employees get their problem codes removed from their personnel files.

12.      I know of many former DOE employees who have problem codes in their personnel files because they declined to be vaccinated in violation of the DOE's mandate and were not granted a religious or medical exemption. The DOE places a problem code on the employee's personnel file immediately upon getting information that the employee did not submit proof of vaccination. As soon as the employee gets the vaccination and submits proof, the code is removed from his or her file.

3

13. Attached as Exhibit A is a true and correct redacted copy of an email one of my clients received from Eric Amato at the DOE. The email was also sent to UFT Assistant Secretary Michael Sill and copies UFT officials including its General Counsel Beth Norton. The email confirms that DOE employees who were placed on leave without pay for failing to be vaccinated in violation of the DOE's mandate had a problem code (as opposed to any other kind of code) added to their personnel files.

14. I am aware that non-DOE schools located in counties outside New York City receive funds from the NYC DOE for certain teaching positions. These may include, for example, special education or STEM teachers.

15. The DOE pays the salaries for these positions using the same system it uses to pay traditional DOE employees, which is called Galaxy. Galaxy indicates whether the employee has a problem code in his or her file and blocks payment to the employee with this flag/code if viewed in the personnel file.

16. Many of my clients with problem codes in Galaxy have looked for other teaching jobs outside the NYC DOE while their problem code appeals were ongoing.

17. At least 15 of my clients with problem codes were not hired by prospective schools outside the DOE because such schools saw the problem codes in Galaxy, even though those schools were located outside New York City.

18. Such schools were able to see the codes because the position applied for was financed by the DOE and so the school used the Galaxy system and could check the prospective employee's file.

4

19.    I also have several clients who applied to schools outside of the DOE who were not hired by their prospective employers because when the prospective employers reached out to the DOE to verify my clients' previous employment, the DOE representative told them about the problem codes in my clients' files.

20.    In sum, any non-DOE school that wants to learn whether a former DOE employee has a problem code in his or her personnel file can readily do so.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
       June 3, 2022

By: Betsy Combier

5

# EXHIBIT A

From: **Amato Eric** <EAmato4@schools.nyc.gov>
Date: Wed, Feb 9, 2022 at 8:06 AM
Subject: RE: PR code
To: ███████████████ Michael Sill <msill@uft.org>
Cc: Beth A. Norton
<bnorton@uft.org>, Kking@uft.org <Kking@uft.org>. dcampbell@uft.org <dcampbell@uft.org>

PR = Problem code – Problem code was added to all employees who were placed on 2VM vaccine mandate leave. It was placed there the day you went on the leave. Our central offices placed this code on all employees who went on the leave. It will be removed once you are eligible to return to work.

Thanks,
Eric

5. In October, 2021, I was involuntarily suspended for failing to get vaccinated in violation of my sincerely held religious beliefs.

6. After the Second Circuit held that the DOE's religious exemption policy was unconstitutional, I was able to apply for reconsideration by the Citywide Panel. The email sent to me stated that we did not need to submit anything because they would rely on the original material.

7. I received no response for months. Meanwhile my situation became desperate.

8. I depleted all of my savings, my son had to take a leave of absence from school because I could not pay the parental portion of tuition, and my children and I were running out of food, and on the brink of losing our home.

9. I owed over $2,000 in heating bills.

10. I applied to over sixty jobs during this period. Despite my extensive qualifications and spotless record, few positions called me back, and none offered me a job.

11. Finally, during an interview in Westchester, the woman conducting the interview took pity on me. She told me she liked me and wished she could hire me.

12. However, she said she had to be honest with me – neither she nor anyone else would be able to hire me.

13. I asked why. She said that there was a "problem" code in the system flagging my name. Outside schools cannot see the reason for the code, other than there is a problem flagged indicating not to hire. Examples she gave me of typical problem codes arose from robbery and other serious misconduct.

14. I have a spotless record and was shocked to find out about this code.

15. I investigated further and learned that the internal records at the DOE showed the reason for the problem code was that I was not vaccinated.

16. My situation grew more desperate every day, and it soon became clear that I would get no other work while this code remains.

17. Finally, to save my family and our home, I took the vaccine, which is against my sincerely held religious beliefs.

18. Within twenty-four hours of submitting my paperwork to the DOE, I was reinstated, and the problem code was removed.

19. Even though I felt I had no choice, this decision has been deeply traumatic and continues to cause irreparable harm.

20. I pray every day for help to overcome my anger, pain, and guilt for having to violate my faith.

21. The experience continues to impact me and to cause me serious distress.

22. I do not feel safe at my job. I do not feel safe in society.

23. The fact that the courts would continue to uphold this brazen unconstitutional condition and fail to intervene to protect us as we lose everything we have worked so hard to achieve continues to shake my faith in this country.

24. If, as the Second Circuit admitted, the DOE violated the Constitution, how can this Court or any other continue to allow the DOE to continue to harm so many of us for not taking the vaccine?

25. I am vaccinated now, but when the inevitable booster requirement comes, I will have to go through all of this again. I do not think that I can violate my faith again. The harm it caused me to do it to save my family was too severe.

26. I only hope that this Court intervenes before that occurs, or at least intervenes before more of my colleagues are forced to be violated the way I was.

27. This is spiritual rape. There is no other way to put it. I did not consent to this.

28. This Court must help us to stop the continuing injustice.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:       New York, New York
             May 20, 2022

                                          By: Natasha Solon

From: **Beth A. Norton** <BNorton@uft.org>
Date: Thu, Jul 28, 2022, 12:36 PM
Subject: RE: Questions about voluntary resignations and follow ups
To:
Cc: Michael Sill <MSill@uft.org>, Michael Mulgrew <MMulgrew@uft.org>, Tanisha
Franks <TFranks@uft.org>, Karen King <KKing@uft.org>

The arbitration award doesn't "expire," I am not sure what you mean by that.

As the language you quoted from the waiver indicates, you will be deemed to have voluntarily resigned your position with the DOE on September 6 if you are not, at that time, in compliance with the health order (vaccinated with 2 shots of Pfizer or Moderna, or 1 shot of J&J). This will be treated as a traditional resignation, it is not a termination. You will be permitted to cash out your CAR and vacation days at the contractual rates. The code on your file indicates that you are not vaccinated, that will not be lifted until such time as you are vaccinated.

You should be receiving an email from the DOE in the next week or so asking for your intent for the fall.

At this time there is no indication that the vaccine mandate will be lifted, so if you wish to return you would have to comply with the health order. If that changes we will let you know.

Regards,

**Beth A. Norton**
General Counsel
United Federation of Teachers
52 Broadway 14th Floor
New York, NY 10004
212-701-9420

# EXHIBIT 9

**ORDER OF THE COMMISSIONER OF HEALTH AND MENTAL HYGIENE
REVISING THE EFFECTIVE DATE FOR REQUIRED COVID-19
VACCINATION OF DEPARTMENT OF EDUCATION
EMPLOYEES, CONTRACTORS, VISITORS AND OTHERS**

**WHEREAS**, on March 25, 2020, the New York City Commissioner of Health and Mental Hygiene declared the existence of a public health emergency within the City to address the continuing threat posed by COVID-19 to the health and welfare of City residents, and such declaration and public health emergency continue to be in effect; and

**WHEREAS,** pursuant to Section 3.01(d) of the Health Code, I am authorized to issue orders and take actions that I deem necessary for the health and safety of the City and its residents when urgent public health action is necessary to protect the public health against an existing threat and a public health emergency has been declared pursuant to such section; and

**WHEREAS,** on September 15, 2021, I issued, and on September 17, 2021, the Board of Health ratified, an Order requiring proof of COVID-19 vaccination for New York City Department of Education ("DOE") employees, contractors, visitors, and others; and

**WHEREAS**, under such Order, DOE staff, charter school staff, and individuals who work in-person in a DOE school setting or DOE building were required to provide proof of vaccination no later than September 27, 2021; and

**WHEREAS,** on September 24, 2021, the United States Court of Appeals for the Second Circuit entered a temporary injunction of said Order, and then on September 27, 2021, the same Court dissolved such injunction;

**NOW THEREFORE** I, Dave A. Chokshi, MD, MSc, Commissioner of Health and Mental Hygiene, finding that a public health emergency within New York City continues, and that it is necessary for the health and safety of the City and its residents, do hereby exercise the power of the Board of Health to prevent, mitigate, control and abate the current emergency, to

**AMEND** my September 15, 2021 Order requiring COVID-19 vaccination for DOE employees, contractors, visitors and others, as ratified by the Board of Health on September 17, 2021, to:

1. Require that any proof of vaccination previously required to be provided by September 27, 2021, or before beginning employment, now be provided no later than Friday, October 1, 2021, or before beginning employment; and

2. Require that beginning Monday, October 4, 2021, any visitor to a DOE school building show proof of receipt of at least one dose of a COVID-19 vaccine, as described in such Order.

Dated:    September 28, 2021

Dave A. Chokshi, M.D., MSc
Commissioner

# EXHIBIT 10

# APPENDIX

# United States Court of Appeals
### FOR THE
### SECOND CIRCUIT

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14th day of November, two thousand twenty-one.

Before:   Pierre N. Leval,
          José A. Cabranes,
          Denny Chin,
          *Circuit Judges.*

---

Michael Kane, William Castro, Margaret Chu,
Heather Clark, Stephanie Di Capua, Robert Gladding,
Nwakaego Nwaifejokwu, Ingrid Romero, Trinidad
Smith, Amaryllis Ruiz-Toro,

     *Plaintiffs-Appellants,*     **ORDER**

      v.           21-2678-cv

Bill de Blasio, in his official capacity as Mayor of
the City of New York, David Chokshi, in his
official capacity of Health Commissioner of the
City of New York, New York City Department of
Education,

     *Defendants-Appellees.*

---

Matthew Keil, John De Luca, Sasha Delgado,
Dennis Strk, Sarah Buzaglo,

     *Plaintiffs-Appellants,*

      v.           21-2711-cv

The City of New York, Board of Education of the
City School District of New York, David Chokshi, in
his Official Capacity of Health Commissioner of the
City of New York, Meisha Porter, in her Official

Capacity as Chancellor of the New York City
Department of Education,

*Defendants-Appellees*.

---

The motions of Plaintiffs-Appellants ("Plaintiffs") for an injunction pending appeal having been heard at oral argument on November 10, 2021, and Defendants-Appellees ("Defendants") having represented to this Court that "the City is working toward making an opportunity for reconsideration available more broadly to DOE employee[s] who unsuccessfully sought religious exemptions pursuant to the arbitration award's appeal process," it is hereby

**ORDERED** that this appeal is expedited and will be heard by a merits panel sitting on November 22, 2021 (the "merits panel"). Pending further order by the merits panel,

1. Plaintiffs shall receive fresh consideration of their requests for a religious accommodation by a central citywide panel consisting of representatives of the Department of Citywide Administrative Services, the City Commission on Human Rights, and the Office of the Corporation Counsel.

2. Such consideration shall adhere to the standards established by Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, and the New York City Human Rights Law. Such consideration shall not be governed by the challenged criteria set forth in Section IC of the arbitration award for United Federation of Teachers members. Accommodations will be considered for all sincerely held religious observances, practices, and beliefs.

3. Plaintiffs shall submit to the citywide panel any materials or information they wish to be considered within two weeks of entry of this order. The citywide panel shall issue a determination on each request no later than two weeks after a plaintiff has submitted such information and materials. Within two business days of the entry of this order, Defendants shall inform plaintiffs' counsel how such information and materials should be transmitted to the citywide panel.

4. The deadline to opt-in to the extended leave program and execute any accompanying waiver shall be stayed for Plaintiffs, and no steps will be taken to terminate the plaintiff's employment for noncompliance with the vaccination requirement.

5. If a plaintiff's request is granted by the citywide panel, the plaintiff will receive backpay running from the date they were placed on leave without pay.

6. This order is intended only to provide for temporary interim relief until the matter is considered by the merits panel of this court, which panel may entirely supersede these provisions for interim relief, and the parties are at liberty to advocate to the merits panel for alteration of these provisions. Unless the merits panel has previously entered a superseding order, within two weeks of the conclusion of Plaintiffs' proceedings before the citywide panel, the parties shall inform the merits panel of the result of those proceedings and advise of any further relief being sought.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

# EXHIBIT 11

September 13th, 2021

To whom it may concern,

**My name is R.        F.        , my employee ID is #....... I have been employed with the NYCDOE for 20 years now. I am extremely proud of all the work I've done with the communities of the Bronx that I've had the privilege of working with. I am currently an Assistant Principal with in the Bronx.**

**"Religious liberty is a foundational principle of enduring importance in America enshrined in our Constitution and other sources of Federal law."** I know that the law in this Country allows for personal religious beliefs and that's what makes me so proud to be an American, where my beliefs and freedoms are protected. I get to work in a city that is literally called the Melting Pot of the Country. It is filled with all different cultures and religions and we can live together respecting and encouraging one another's differences.

My faith, and religious journey is the most important thing in my life. I am a devout Christian; my life is led by the Holy Spirit that lives inside of me. It is my religious belief that my God is my healer and I put all my faith and hope in Him. It is my religious belief that it is a complete betrayal of faith to put my hope and faith in any vaccine to keep my body healthy. My God will heal me and my family. We have all contracted covid and He kept us all, safe and whole.

Any blood that may be in any vaccines is sacrilegious and I cannot allow my body to be corrupted or made unclean. 1 Corinthians 3:17 "If anyone destroys God's temple, God will destroy that person; for God's temple is sacred, and you together are that temple". Exodus 15:26 "I am the Lord that heals you." Fetal cells that may be used in creating this vaccine, goes against my stance on abortion. As a Christian I am against murder. Exodus 20:13 "You shall not murder." Therefore, taking this vaccine will desecrate my body. Even though I have been fully vaccinated in my childhood, that choice was performed by the choices of my non-religious parents, whom I loved dearly. As an adult, husband and father, I choose to live out my life through God's command from His Holy word, the Bible.

My faith and relationship in God are what helps guide my life and helps me discern what is needed to keep my body in line with the Word of God. I am created in the image of God. My body/blood is a sacred being and must remain pure in the sight of God. Taking this vaccine or any other vaccine for that matter would go against everything I believe and base my life upon.

I ask that you please keep this confidential, I am only sharing these personal things so you could have a better understanding of my declination of this vaccine due to my religious beliefs. Please understand my convictions. Thank you for your time and consideration.

Sincerely,


R        F

# EXHIBIT 12

**From:** solas_donotreply@schools.nyc.gov <solas_donotreply@schools.nyc.gov>
**Sent:** Thursday, December 8, 2022 4:11 PM
**To:**        <AP      @schools.nyc.gov>
**Cc:** Cheatham Michael <MCheatham@schools.nyc.gov>; Gonzalez Sabrina <SGonzalez7@schools.nyc.gov>; Tu
Vera <VTu@schools.nyc.gov>; Yin Jinmei <JYin4@schools.nyc.gov>; Bonilla Jessica <JBonilla10@schools.nyc.gov>; O'Hara Katharine <KOhara7@schools.nyc.gov>; Ray Janiece <JRay2@schools.nyc.gov>; Pedone Allison <APedone@schools.nyc.gov>; Mar n Dedosha <DMartin34@schools.nyc.gov>; Wilson Ovella <OWilson@schools.nyc.gov>; Cox Kyra <KCox@schools.nyc.gov>; Cox Kyra <KCox@schools.nyc.gov>; Mercado Karen <KMercad@schools.nyc.gov>;
Walsh Joanne <JWalsh38@schools.nyc.gov>; Aiello Robert <RAiello@schools.nyc.gov>
**Subject:** Extension of Your COVID-19 Vaccine Medical Exemption

12/08/2022
Case#: A85819
File#:
Emp ID:

Dear A  P,

The HR Connect Office of Medical, Leaves and Records Administration, along with the Office of Disability Accommodation, have extended your COVID-19 vaccine medical exemption until January 27, 2023.

As you have previously been advised, if you wish to apply for an exemption to the vaccine mandate after that date, you will be required to submit a new application in January with updated medical information.

Please do not submit an application at this time. You will be advised on a timeline for such applications but anticipate it will be after January 3,2023
.
As you have previously been advised, while your exemption is in place, if your usual place of work is in a school building, unless otherwise directed, you will be given a non-school work location. Unless/until notified of this alternate location, you may work remotely. During this period, you must remain within regular commuting distance of your school during workdays. You are expected to continue to support your school with work assigned by your school. You must work a full workday and regular work hours. You should check-in daily with your school's payroll secretary or regular timekeeper for timekeeping purposes. Please note that this work assignment and/or location is subject to change.

If your usual place of work is not in a school building, you should remain in your current assignment and location unless you are advised otherwise. This exemption and any related accommodation(s), as well as your work location assignment, are subject to change as per changes in applicable law and DOE and/or City policy.

Sincerely,

*HR Connect*
Medical, Leaves, and Records Administration

# EXHIBIT 13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X :

MICHAEL KANE, et al.,                                   :

                     Plaintiffs,              :

                                  :   Case No.  21-cv-7863 (VEC) (Lead)

        - against -                          :

DE BLASIO et al.,                                       :

                     Defendants.             :

-------------------------------------------------------X :

MATTHEW KEIL, et al.                                    :

                     Plaintiffs,              :

                                  :   Case No.  21-cv-8773 (VEC)

        - against -                          :

THE CITY OF NEW YORK et al.,                            :

                     Defendants.             :

-------------------------------------------------------X

## DECLARATION OF BETSY COMBIER

Betsy Combier declares as follows, pursuant to 28 U.S.C. § 1746:

1.      My name is Betsy Combier and I am the President and lead paralegal of Advocatz, a paralegal consulting business for people who need a partner as they go through the Courts, grievances, or life problems.

2.      I respectfully submit this Declaration in support of Plaintiffs' Motion for a Preliminary Injunction.

3.      I know the facts stated herein to be true based upon my personal knowledge and based upon my review of the files of hundreds of my clients whom I have represented in proceedings with the New York City Department of Education ("DOE"), except

1

for statements which are made on information and belief and, as to those, I verily believe them.

4. I have a degree in Child Psychology from Northwestern University, an MA Certificate from the Johns Hopkins' School for Advanced International Studies where my specialization was the Soviet Military Industrial Complex, an MPS in Interactive Telecommunications from New York University, and a Certificate in Art and Drama Therapy from The New School.

5. I have successfully assisted parents, children, and caregivers with the educational needs of their children, and I have been advocating for the due process rights of Union members—in particular, members of the AFL-CIO, United Federation of Teachers ("UFT") and Local 32 B&J—for 17 years.

6. From 2007-2010, I worked as Special Representative to the UFT where my job was to oversee the eight re-assignment centers in the NYC DOE, first in all boroughs, and then at the Manhattan, Brooklyn, and Bronx locations.

7. I am very familiar with the arbitration hearing process, set forth in New York Education Law § 3020-a, having assisted teachers in approximately 300 3020-a hearings since 2003.

8. I am also very familiar with "problem codes"—the flag the DOE puts in the personnel file of employees to indicate that they should not be hired due to unexplained misconduct of some kind. Employees can be flagged for everything from receiving an unsatisfactory or ineffective rating to engaging in egregious criminal acts. During the three years I worked at the UFT headquarters, I received countless calls every week

2

asking me if there was a problem code on an employee's personnel file. When that happened, I would simply ask the person next door to my office, another UFT Special Representative, whether she could check her computer, and she would tell me "yes" or "no" within a minute.

9.    When the DOE puts a problem code in the employee's personnel file, it also places a flag on the employee's fingerprints, which is then sent to the national databases at both the Federal Bureau of Investigation and the State Division of Criminal Justice Services.

10.   I have represented more than 15 DOE employees before the DOE's Office of Personnel Investigation in proceedings in which they requested the removal of their problem codes. The flag has several names such as "problem code," "pr" code, "pc" code, "ineligible," and "no hire/inquiry" code; however, all refer to a salary block, whatever title it is given.

11.   I have helped approximately 20 DOE employees get their problem codes removed from their personnel files.

12.   I know of many former DOE employees who have problem codes in their personnel files because they declined to be vaccinated in violation of the DOE's mandate and were not granted a religious or medical exemption. The DOE places a problem code on the employee's personnel file immediately upon getting information that the employee did not submit proof of vaccination. As soon as the employee gets the vaccination and submits proof, the code is removed from his or her file.

3

13. Attached as Exhibit A is a true and correct redacted copy of an email one of my clients received from Eric Amato at the DOE. The email was also sent to UFT Assistant Secretary Michael Sill and copies UFT officials including its General Counsel Beth Norton. The email confirms that DOE employees who were placed on leave without pay for failing to be vaccinated in violation of the DOE's mandate had a problem code (as opposed to any other kind of code) added to their personnel files.

14. I am aware that non-DOE schools located in counties outside New York City receive funds from the NYC DOE for certain teaching positions. These may include, for example, special education or STEM teachers.

15. The DOE pays the salaries for these positions using the same system it uses to pay traditional DOE employees, which is called Galaxy. Galaxy indicates whether the employee has a problem code in his or her file and blocks payment to the employee with this flag/code if viewed in the personnel file.

16. Many of my clients with problem codes in Galaxy have looked for other teaching jobs outside the NYC DOE while their problem code appeals were ongoing.

17. At least 15 of my clients with problem codes were not hired by prospective schools outside the DOE because such schools saw the problem codes in Galaxy, even though those schools were located outside New York City.

18. Such schools were able to see the codes because the position applied for was financed by the DOE and so the school used the Galaxy system and could check the prospective employee's file.

4

19.    I also have several clients who applied to schools outside of the DOE who were not hired by their prospective employers because when the prospective employers reached out to the DOE to verify my clients' previous employment, the DOE representative told them about the problem codes in my clients' files.

20.    In sum, any non-DOE school that wants to learn whether a former DOE employee has a problem code in his or her personnel file can readily do so.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
      June 3, 2022

By: Betsy Combier

5

# EXHIBIT A

From: **Amato Eric** <EAmato4@schools.nyc.gov>
Date: Wed, Feb 9, 2022 at 8:06 AM
Subject: RE: PR code
To: ███████████████ Michael Sill <msill@uft.org>
Cc: Beth A. Norton <bnorton@uft.org>, Kking@uft.org <Kking@uft.org>, dcampbell@uft.org <dcampbell@uft.org>


PR = Problem code – Problem code was added to all employees who were placed on 2VM vaccine mandate leave. It was placed there the day you went on the leave. Our central offices placed this code on all employees who went on the leave. It will be removed once you are eligible to return to work.


Thanks,
Eric