UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                                                     :
**DIANNE BAKER-PACIUS** and                                          :
**CHRISTOPHER J. GARRY**,                                            :
                                                                     :    **MEMORANDUM DECISION AND**
                             Plaintiffs,                             :    **ORDER**
                                                                     :
             – against –                                            :    25-CV-743 (AMD) (JAM)
                                                                     :
                                                                     :
**THE DEPARTMENT OF EDUCATION OF**                                   :
**THE CITY OF NEW YORK, MELISSA**                                    :
**AVILES-RAMOS,** Chancellor and **KATHERINE**                       :
**RODI,** Director of Employee Relations,                            :
                                                                     :
                             Defendants.                             :
------------------------------------------------------------------ X

**ANN M. DONNELLY**, United States District Judge:

The *pro se* plaintiffs bring this case against the New York City Department of Education

("DOE"), the DOE Chancellor, and the DOE Director of Employee Relations for violations of

the United States Constitution, the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq*., New

York State Education Law §§ 3020, 3020-a, New York State Human Rights Law, N.Y. Exec.

Law § 296, *et seq*. ("NYSHRL"), New York City Human Rights Law, N.Y.C. Administrative

Code § 8-107, *et seq*. ("NYCHRL"), and the New York State constitution. The plaintiffs' claims

arise out of the DOE's vaccine mandate, which required DOE employees to be vaccinated

against COVID-19.[1]  Before the Court is the defendants' motion to dismiss the complaint

pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court

---

[1] The Court treats the plaintiffs' lawsuit against the DOE as one against the City of New York. *See Broecker v. New York City Dep't of Educ.*, No. 23-655, 2023 WL 8888588, at *1 n.1 (2d Cir. Dec. 26, 2023).

1

grants the motion to dismiss the plaintiffs' federal claims and declines to exercise jurisdiction over their state law claims.

## BACKGROUND[2]

### I.     The COVID Vaccine Mandate

In 2020, New York City shut down because of the COVID-19 pandemic, and teachers taught remotely from March 2020 to September 2021.  (ECF No. 7 ¶ 50.)  Beginning in August 2021, the City issued over a hundred emergency orders "that collectively functioned to mandate the COVID vaccine . . . for nearly every working person in the City."  (*Id.* ¶ 53.)  However, there were exemptions for professional athletes, performers, election workers, school bus drivers and delivery personnel, and most of the private sector.  (*Id.*)

On August 23, 2021, Mayor de Blasio and NYC Commissioner of Health and Mental Hygiene David Chokshi announced a "Vaccine Only" mandate for people who worked in NYC DOE buildings.  (ECF No. 8 at 39.)[3]  Under the new mandate, employees had to show that they had started the vaccination protocol by September 27, 2021, or they would not be allowed in DOE buildings, would not be paid for work, and would risk losing their jobs and benefits.  (*Id.*)  The mandate did not provide for medical or religious exceptions or accommodations, and did not

---

[2] The facts are drawn from the complaint, the plaintiffs' opposition, and documents and exhibits that the plaintiffs include with the complaint or incorporate into the complaint by reference.  *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion."); *Williams v. Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011) ("[A] district court . . . is generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated into the complaint by reference." (citation omitted)).  "[W]hen any allegations contradict the evidence contained in the documents relied upon by a plaintiff, the documents control, and the Court need not accept the allegations contained within the complaint as true."  *Zoulas v. New York City Dep't of Educ.*, 400 F. Supp. 3d 25, 48 (S.D.N.Y. 2019) (*quoting Rozsa v. May Davis Group, Inc.*, 187 F. Supp. 2d 123, 128 (S.D.N.Y. 2002)).

[3] This was a change from the July 2021 "Vaccine-or-Test" mandate that required City workers, including United Federation of Teachers ("UFT") educators, to be vaccinated against COVID or to test weekly.  (ECF No. 8 at 39.)

address "matters of due process with regard to job and benefits protection." (*Id.*) On September 1, 2021, the UFT filed a Declaration of Impasse with the Public Employment Relations Board ("PERB") over the impact and implementation of the vaccine mandate. (*Id.* at 40; ECF No. 7 ¶ 57.) Martin Scheinman, the arbitrator, presided over a mediation, and issued an arbitration award on September 10, 2021. (ECF No. 8 at 40–41; ECF No. 7 ¶ 57.) The arbitration award established, among other things, (1) a process for exemptions, accommodation requests, and appeals; (2) a leave without pay ("LWOP") system for employees who did not request an exemption or were denied an exemption, but would continue to receive health insurance; (3) options for employees on LWOP to extend or separate from the DOE and receive benefits; and (4) a "unilateral separation" process for employees who did not comply with the mandate and had no approved exemption or accommodation, or did not separate or extend their LWOP. (ECF No. 8 at 42–54.)

On November 28, 2021, the Second Circuit decided *Kane v. De Blasio*, 19 F.4th 152 (2d Cir. 2021), which, according to the plaintiffs, resulted in the arbitration award being "thrown out, and the LWOP process [being] designated 'unconstitutionally unsound.'" (ECF No. 7 ¶ 70.) In *Kane*, the Second Circuit "took issue" with the arbitration award's direction that religious exemption "requests shall be denied where the leader of the religious organization [to which the requestor belongs] has spoken publicly in favor of the vaccine, . . . or where the objection is personal, political, or philosophical in nature," because "[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, *or the validity of particular litigants' interpretations of [their] creeds*." *New Yorkers for Religious Liberty, Inc. v. City of New York*, 125 F.4th 319, 325 (2d Cir. 2025) (quoting *Kane*, 19 F.4th at 168) (emphasis in original), *cert. denied sub nom. Kane v. City of New York, New York*, No. 25-126, 2025 WL

3620461 (U.S. Dec. 15, 2025).  Following *Kane,* the City created a citywide panel to review religious accommodation requests.  *Id.*  "In effect, the Citywide Panel offered employees who had been denied a vaccination-related accommodation a form of administrative appellate review."  *Id.*

## II.      Factual Background

### a.  Dianne Baker-Pacius

In 2005, the DOE hired Baker-Pacius, and she subsequently received tenure.  (ECF No. 7 ¶ 12.)  On September 21, 2021, Baker-Pacius submitted a religious exemption request to the DOE's database.  (*Id.* ¶ 26.)[4]  The DOE denied her request the next day and explained that the department "cannot offer another worksite as an accommodation as that would impose an undue hardship (i.e. more than a minimal burden) on the DOE and its operations."  (*Id.* ¶ 26; ECF No. 8 at 7.)  The DOE advised Baker-Pacius that pursuant to the Arbitration Award, she could appeal the denial to an independent arbitrator, within one school day of the notice, by selecting the option "I would like to APPEAL" in the DOE database.  (ECF No. 8 at 7.)  Baker-Pacius says that she "tried to re-submit" her exemption request, "but the portal for submissions was closed." (ECF No. 7 ¶ 26.)

On November 15, 2021, Baker-Pacius contacted UFT for assistance in filing two grievances: one against the DOE for stopping her pay without due process, and a second for "eight unauthorized absences" that were on her payroll system during days she was on unpaid leave.  (ECF No. 8 at 16–17.)  The next day, a UFT representative responded that she would file a grievance on Baker-Pacius's behalf, but that it would probably not be successful because "it is

---

[4] The plaintiff's religious objection was that her "body belongs to God," that she keeps her "body pure, holy, sacred, and clean" and does "not inject anything impure into it."  (ECF No. 8 at 12.)  She also says getting the vaccine would "infringe on [her] moral conscience, thereby impacting [her] path with God." (*Id.*)

a Department of Health mandate due to a pandemic." (ECF No. 8 at 15.) On November 18, 2021, Baker-Pacius filed a grievance with the Hugo Newman College Preparatory School, claiming a violation of her rights under Article 20 of a collective bargaining agreement when she was suspended and moved to unpaid status after the vaccine mandate. (*Id.* at 19.)[5] Principal Jeneca Parker met with Baker-Pacius and a UFT representative by videoconference on November 24, 2021 to discuss the grievance. (*Id.*) On November 29, 2021, Parker notified Baker-Pacius that she was denying the grievance because Baker-Pacius did not show a violation of the collective bargaining agreement. (*Id.*) Baker-Pacius asked Saul Zalkin in the UFT Grievance Department to explain why her grievance was denied, and said she intended to appeal the decision. (*Id.* at 22.) When Zalkin could not reach Baker-Pacius by telephone, he asked her to call him to discuss her case. (*Id.* at 21.) She responded that she preferred to communicate by email. (*Id.*)

In January 2022 Baker-Pacius tried again to submit "her statement for religious accommodation," but could not because she was listed as non-vaccinated. (ECF No. 7 ¶ 27.) She wrote letters to DOE officials about "the lawless procedures being used to deprive her of her job" but the defendants "never engaged in a statutorily cooperative dialogue." (*Id.* ¶ 28.) Baker-Pacius was terminated on February 11, 2022. (*Id.* ¶ 85.) In May 2022 Baker-Pacius learned that the DOE placed a problem code — which would not allow her to "work in her chosen profession in New York City" — on her personnel file without her consent. (*Id.* ¶ 31.) She could not find out why, or how to remove the code. (*Id.*)

---

[5] Around this time, Baker-Pacius also received a 3020-a hearing request form. (ECF No. 7 ¶ 29.)

### b. Christopher Garry

Garry taught physical education at John Bowne High School for over 23 years, and was the UFT chapter leader there from 2009 to 2012. (*Id.* ¶ 13.) On September 15, 2021 Garry gave the DOE a doctor's note that said, "Christopher Garry . . . has had multiple pulmonary embolism's [sic] over his lifetime. Christopher was advised to not have the COVID vaccine because of the risk of another pulmonary embolism." (ECF No. 8 at 27; ECF No. 7 ¶ 37.) On September 21, 2021, the DOE sent him a notice denying his request. (ECF No. 7 ¶ 38; ECF No. 8 at 29.) The notice listed "other" as the reason for denial; in the "additional information," it reads: "Attn. MD: PMHx of P.E. is not a contraindication to COVID vaccine (as per CDC website)." (ECF No. 8 at 29.) Garry tried to appeal this ruling, but the "portal for submission was not open." (ECF No. 7 ¶ 39.) He filed a form request with the UFT for a §3020-a arbitration before he was terminated, but did not receive a response. (*Id.* ¶ 43.) Someone from the UFT told him that the DOE refused to schedule §3020-a hearings. (*Id.*)

Garry was terminated on February 11, 2022. (*Id.* ¶ 85.) In May 2022, Garry was notified that the DOE placed a problem code on his personnel file without his consent. (*Id.* ¶ 44.) He could not find out why, or how to remove the code, which was "scarring his good name and career." (*Id.*)

## III.    Procedural History

The plaintiffs brought this action on February 10, 2025. (ECF No. 1.) They amended their complaint on April 23, 2025. (ECF No. 7.) They bring claims for religious discrimination, violations of the Takings Clause, failure to accommodate, violations of equal protection, and fraud in the inducement. (*Id.* ¶¶ 90–143.) Although they do not specifically list them as causes of action, they also make arguments about the Rehabilitation Act, stigma plus, violations of the

6

Due Process Clause and the First Amendment, and violations of New York State Education Law, the NYSHRL, the NYCHRL, and the New York State constitution.  (*Id.* ¶ 2.)  On July 21, 2025, the defendants moved to dismiss the complaint.  (ECF No. 19.)

**LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).  While "detailed factual allegations" are not required, a complaint must plead "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."  *Twombly*, 550 U.S. at 545.  A complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement."  *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted).  When ruling on a motion to dismiss, "the court must accept as true all factual allegations in the complaint" and "[a]ll reasonable inferences must be drawn in favor of the non-moving party."  *Watral v. Silvernails Farms, LLC*, 177 F. Supp. 2d 141, 147 (E.D.N.Y. 2001), *aff'd sub nom. Watral v. Silvernails Farms LLC.*, 51 F. App'x 62 (2d Cir. 2002) (citation omitted).

The Court construes *pro se* complaints liberally and interprets them "to raise the strongest arguments that they suggest."  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)).  However, the Court "need not argue a *pro se* litigant's case nor create a case for the *pro se* which does not exist;" accordingly, "[w]hen a *pro se* plaintiff has altogether failed to satisfy a pleading requirement, the

7

Court must dismiss the claim." *Malachi v. Postgraduate Ctr. for Mental Health*, No. 10-CV-3527, 2013 WL 782614, at *1 (E.D.N.Y. Mar. 1, 2013) (citation omitted).

**DISCUSSION**

**I.    Federal Claims**

**a.  Religious Discrimination**

Baker-Pacius brings a claim for religious discrimination, which the Court interprets as a claim for disparate treatment.  She asserts that the defendants discriminated against her when they "forced her into a suspension without pay," "denied her exemption request and Appeals," and "terminated her employment."  (ECF No. 7 ¶ 94.)  She dismisses the defendants' reasons for the denial — that she did not meet the criteria for an exemption, and that the defendants would suffer an undue hardship — as "plainly false pretexts attempting to cover for the Defendants' explicit religious discrimination."  (*Id.* ¶ 93.)  She says that "other teachers similarly situated were granted exemption/accommodations for their religious beliefs which prohibited getting vaccine."  (*Id.* ¶ 92.)

According to the defendants, Baker-Pacius was "no longer qualified to serve as a public employee," because she "failed to satisfy a condition of [her] DOE employment" — complying with the vaccine mandate.  (ECF No. 21 at 29.)  They also say that the amended complaint "does not set forth a single fact to plausibly suggest that Baker Pacius' purported religion was a motivating factor in DOE's decision to deny her" reasonable accommodation request and terminate her.  (*Id.*)  Baker-Pacius responds that there "was no employment requirement to get vaccinated with the COVID vaccine or be fired," and that the defendants "made that up and then used it as their standard to dismiss Plaintiffs' case."  (ECF No. 34 at 17.)  She also says that ten DOE employees "won their religious exemption/accommodations:" that RF "won his religious

8

exemption and was appointed Director/administrator of the reassignment building" at St. Brigids, and Daniel Michelson "was another teacher who was at St. Brigids." (*Id.* at 18.)

To state a claim for employment discrimination based on disparate treatment under Section 1983 or Title VII, a plaintiff must plead that she (1) "is a member of a protected class," (2) "was qualified" for the position, (3) "suffered an adverse employment action," and (4) "has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Hurley v. Dep't of Educ. of City of N.Y.*, No. 24-CV-1664, 2025 WL 2711471, at *4 (E.D.N.Y. Sept. 23, 2025) (quoting *Buon v. Spindler*, 65 F.4th 64, 79 (2d Cir. 2023)).  Courts have held that the COVID-19 vaccine mandate was "a lawful condition of employment." *Broecker v. New York City Dep't of Educ.*, 585 F. Supp. 3d 299, 316 (E.D.N.Y. 2022), *aff'd,* No. 23-655, 2023 WL 7485465 (2d Cir. Nov. 13, 2023), *and aff'd,* No. 23-655, 2023 WL 8888588 (2d Cir. Dec. 26, 2023).  Thus, once the mandate went into effect and Baker-Pacius refused to get the vaccine, she was no longer qualified for her position. *See Brown v. S. Shore Univ. Hosp.*, 762 F. Supp. 3d 191, 207 (E.D.N.Y. 2025) ("District courts in this Circuit have found that where a hospital imposed a COVID-19 vaccination requirement as an employment requirement and an employee failed to comply with that requirement, the employee was not qualified for their position for purposes of bringing a Title VII employment discrimination claim."); *Tandian v. State Univ. of N.Y.*, 698 F. Supp. 3d 425, 439 (N.D.N.Y. 2023) ("[T]o be qualified for her position as a Teaching and Research Center Nurse 2, Plaintiff must have been vaccinated against COVID-19 or received a medical exemption; it is undisputed that she did neither.").

Nor has the plaintiff alleged facts that give rise to an inference of unlawful discrimination based on disparate treatment.  A plaintiff makes that showing if she alleges that she "actually require[d] an accommodation of [a] religious practice, and the employer's desire to avoid the

9

prospective accommodation is a motivating factor in [its] decision." *Hurley*, 2025 WL 2711471, at *4 (quoting *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773–74 (2015)). Baker-Pacius has not alleged any facts that show "her discharge was motivated by discriminatory intent" or that the defendants' "desire to avoid providing an accommodation was a motivating factor in its decision to terminate her." *Id.*[6]  Baker-Pacius alleges that she was terminated, and her personnel file was tagged with a problem code, because she refused to get the COVID-19 vaccine.  (*See, e.g.*, ECF No. 7 ¶¶ 91, 95, 118.)  She also acknowledges that other employees were given accommodations, (*id.* ¶¶ 8, 83), which "cuts against any reasonable inference that [the defendants] terminated [her] or others out of a reluctance to provide a religious accommodation." *Hurley*, 2025 WL 2711471, at *5.  For these reasons, the plaintiff does not state a claim for religious discrimination under a theory of disparate treatment.

### b.  First Amendment

Baker-Pacius also asserts that "[a]ll such discrimination violates the Free Exercise and Establishment Clauses of the First Amendment."  (ECF No. 7 ¶ 97.)  In her opposition to the defendants' motion to dismiss, she says that the defendants' policies "burdened the exercise of her sincere Christian beliefs."  (ECF No. 34 at 21.)  The defendants argue that her Free Exercise Clause claim "is foreclosed by Second Circuit precedent conclusively determining that the Vaccine Mandate is neutral and generally applicable," and that her Establishment Clause claim fails because the plaintiff does not allege that the vaccine mandate "advanced or inhibited religion or showed preference to any particular religion."  (ECF No. 21 at 21–23.)

"The Free Exercise Clause . . . protects an individual's private right to religious belief, as well as 'the performance of (or abstention from) physical acts that constitute the free exercise of

---

[6] As explained below, the plaintiff sought a full exemption from the vaccine requirement, not an accommodation.

religion.'" *New Yorkers for Religious Liberty, Inc.*, 125 F.4th at 330 (quoting *Kane*, 19 F.4th at 163–64). "This protection, however, 'does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability.'" *Id*. (quoting *Kane*, 19 F.4th at 164). "For purposes of a facial claim, a 'law that is facially neutral [may] still run afoul of the neutrality principle if it 'targets religious conduct for distinctive treatment.'" *Id.* (quoting *Kane*, 19 F.4th at 164). To the extent that Baker-Pacius means to make a facial challenge to the vaccine mandate under the Free Exercise Clause, the Second Circuit has "previously determined that the City's 'Vaccine Mandate, in all its iterations, [wa]s neutral[,] generally applicable,' and facially constitutional under the Free Exercise Clause." *Id.* (quoting *Kane*, 19 F.4th 152 at 164). Nor would an as-applied challenge survive, because Baker-Pacius has not made "more-than-conclusory allegation[s] that the finding of undue hardship was erroneous or pretextual." *Id.* at 333; *see also Hurley*, 2025 WL 2711471, at *12 (where the plaintiff "on numerous occasions refers to 'undue hardship' as the reason for the Citywide Panel's denial of her appeal," "her pleading suggests that Defendant denied her exemption request 'on the independent ground of undue hardship.'" (quoting *New Yorkers for Religious Liberty*, 125 F.4th at 335)).

"The Establishment Clause prevents the enactment of laws that have the 'purpose' or 'effect' of 'advancing or inhibiting religion.'" *New Yorkers for Religious Liberty*, 125 F.4th at 330 (quoting *Agostini v. Felton*, 521 U.S. 203, 222–23 (1997)). "Laws that 'grant[ ] a denominational preference' by preferring one religion over another violate the Establishment Clause, too." *Id.* (quoting *Larson v. Valente*, 456 U.S. 228, 244–46 (1982)). Baker-Pacius challenges the arbitration award's provision that an accommodation request should be denied if the applicant's religious leader has publicly expressed support for vaccination. (ECF No. 7 ¶ 64.) She also says that the "DOE allowed accommodation based upon membership in a

11

preferred religious organization." (*Id.*)  These allegations suggest a facial, rather than an as-applied, challenge to the vaccine mandate.  But the plaintiff is challenging processes that no longer exist, because the City changed them after the Second Circuit decided *Kane.  See New Yorkers for Religious Liberty, Inc.*, 125 F.4th at 331 ("Even if these allegations in the CAC demonstrated an Establishment Clause issue with the now-stricken Arbitration Award Standards, Appellants have failed to allege an Establishment Clause violation with respect to the Citywide Panel or the City's *current* processes, which were implemented after our remand in *Kane I*.").  Moreover, the Supreme Court "has instructed that the Establishment Clause must be interpreted by 'reference to historical practices and understandings.'"  *Hager v. People Inc.*, No. 23-CV-560, 2025 WL 2938608, at *7 (W.D.N.Y. Oct. 16, 2025) (quoting *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 510 (2022)).  Thus, "binding authority" citing the "long history of vaccination requirements in this country and in this Circuit" warrants dismissal of Baker-Pacius's facial Establishment Clause challenge.  *Lynch v. Dep't of Educ. of City of New York*, No. 24-CV-7795, 2025 WL 3731018, at *10 (E.D.N.Y. Dec. 26, 2025) (collecting cases).

Accordingly, the plaintiff's First Amendment claims are dismissed.

### c.  Rehabilitation Act

Liberally construing the complaint, Garry brings a claim under the Rehabilitation Act. (*See* ECF No. 7 ¶ 111.)  To establish a *prima facie* discrimination claim under the Rehabilitation Act, a plaintiff must show that (1) he is a "qualified individual" with a disability; (2) the defendant "receive[s] federal funding;" and (3) the plaintiff was "denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of [ ] [her] disability."  *Doall v. New York State Unified Ct. Sys.*, No. 23-CV-364, 2024 WL 3302376, at *8 (E.D.N.Y. July 2, 2024) (quoting

*Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)).  "A person has a 'disability' under the ADA (or Rehabilitation Act) if he has: (a) 'a physical or mental impairment that substantially limits one or more [of his] major life activities,' (b) 'a record of such an impairment,' or (c) is 'regarded as having such an impairment.'"  *Id.* (quoting *Veldran v. Dejoy*, 839 F. App'x 577, 579 (2d Cir. 2020)).  "Major life activities include 'caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'"  *Id.* (quoting *Veldran*, 839 F. App'x at 579).  "[N]ot every impairment will constitute a disability."  *Id.* (citation omitted).

Garry does not allege that he has a disability within the meaning of the Rehabilitation Act.  He requested an exemption from the vaccine mandate because he had multiple pulmonary embolisms, and receiving the COVID vaccine would put him at risk for another pulmonary embolism.  (ECF No. 7 ¶ 37; ECF No. 8 at 27.)  He has not alleged how his multiple pulmonary embolisms affect his ability to care for himself, perform manual tasks, walk, see, hear, speak, breathe, learn, or work.  *See Doall*, 2024 WL 3302376, at *8.  Thus, he has not alleged a "physical or mental impairment that substantially limits one or more of his major life activities."  *Id.* (citation modified).

Garry also appears to bring a retaliation claim either under the Rehabilitation Act or the Americans with Disabilities Act (ECF No. 7 ¶¶ 110–11), but he does no more than list the elements of a retaliation claim and does not allege any facts to support the claim.  Thus, to the extent he brings a retaliation claim, this claim is dismissed.

Accordingly, the plaintiff's rehabilitation claim is dismissed.

13

### d. Failure to Accommodate

The plaintiffs bring claims for failure to accommodate; Baker-Pacius asserts that the defendants did not accommodate her sincerely held religious beliefs, and Garry asserts that they did not accommodate his medical condition.  (ECF No. 7 ¶¶ 117–23.)  The defendants argue that Baker-Pacius does not allege how her religious belief conflicts with the vaccine mandate, and that Garry does not allege a qualifying disability, or that his disability was a contraindication to the available COVID vaccines.  (ECF No. 21 at 31–32.)  The defendants argue that regardless, they "can easily show undue hardship."  (*Id.* at 32.)

"'To survive a motion to dismiss, a plaintiff asserting a Title VII religious-discrimination claim' based on a failure to accommodate 'must plausibly allege that (1) [he or she] held a bona fide religious belief conflicting with an employment requirement; (2) [he or she] informed [his or her] employers of this belief; and (3) [he or she] [was] disciplined for failure to comply with the conflicting employment requirement.'"  *Hurley*, 2025 WL 2711471, at *5 (quoting *D'Cunha v. Northwell Health Sys.*, No. 23-CV-476, 2023 WL 7986441, at *2 (2d Cir. Nov. 17, 2023)).  However, the plaintiff's claim fails if the defendant shows "that the prospective accommodation would cause the employer to suffer an undue hardship."  *Id.* (citation modified).

There is no dispute that the DOE rejected Baker-Pacius's religious accommodation request because it "would impose an undue hardship . . . on the DOE and its operations."  (ECF No. 8 at 7.)  In rejecting her request, the DOE explained that "unvaccinated employees cannot work in a [DOE] building or other site with contact with DOE students, employees, or families without posing a direct threat to health and safety."  (*Id.*)  In any event, Baker-Pacius was not seeking an accommodation.  She was seeking a blanket exemption from the vaccination

14

requirement.[7]  "[C]ourts have routinely found that a full exemption from the COVID-19 vaccine would constitute an undue hardship for Title VII religious accommodation claims."  *Hurley*, 2025 WL 2711471, at *7; *see also Beickert v. New York City Dep't of Educ.*, No. 22-CV-5265, 2023 WL 6214236, at *5 (E.D.N.Y. Sept. 25, 2023) ("Even if [the plaintiff] took precautions such as wearing gloves, masks, and a face shield, her presence as an unvaccinated individual would have presented a risk to the vulnerable and still primarily unvaccinated student population and other employees." (citation modified)); *Fugelsang v. Dep't of Educ. of New York City*, No. 23-CV-8332, 2025 WL 974276, at *3 (E.D.N.Y. Mar. 31, 2025) ("[T]he hardship that the presence of unvaccinated employees would pose for the DOE has been well-documented by courts in this circuit.").

"To make out a *prima facie* disability discrimination case based upon a failure to accommodate, a plaintiff must establish that: '(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.'"  *Tafolla v. Heilig*, 80 F.4th 111, 118 (2d Cir. 2023) (quoting *McBride v. BIC Consumer Prod. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009)).  "If a plaintiff suggests plausible accommodations, the burden of proof shifts to the defendant to demonstrate that such accommodations would present undue hardships and would therefore be unreasonable."  *McMillan v. City of New York*, 711 F.3d 120, 128 (2d Cir. 2013).

"A 'disability' for the purposes of the ADA is defined as '(i) [a] physical or mental impairment that substantially limits one or more of the major life activities of such individual . . .

---

[7] Baker-Pacius argues that "[e]very other tenured educator in the State whether vaccinated or not, were given accommodations such as masks and testing," (ECF No. 7 ¶ 129), but does not allege that she asked for these accommodations.

15

or (iii) [b]eing regarded as having such an impairment.'" *Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 168 (2d Cir. 2024) (quoting 29 C.F.R. § 1630.2(g)(1)). "An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity *as compared to most people in the general population*." *Id.* (quoting 29 C.F.R. § 1630.2(j)(1)(ii)) (emphasis in *Sharikov*). "Therefore, to be perceived as having a disability, one must be perceived as different from most people in the general population." *Id.* Garry does not allege a disability as defined by the ADA. As explained above, he requested an exemption from the vaccine mandate because he had multiple pulmonary embolisms, and receiving the COVID vaccine would put him at risk for another pulmonary embolism. (ECF No. 7 ¶ 37; ECF No. 8 at 27.) But he does not allege that the pulmonary embolisms "substantially limit[ed] one or more of [his] major life activities" or that he was "regarded as having such an impairment." *Sharikov*, 103 F.4th at 168.

Accordingly, the plaintiffs' failure to accommodate claims are dismissed.

### e. Due Process

The plaintiffs allege that the defendants violated their due process rights when they terminated them without giving them § 3020-a hearings. (ECF No. 7 ¶¶ 54, 84, 122, 140–41.) The defendants assert that the plaintiffs were not entitled to § 3020-a hearings because the COVID vaccine was a condition of employment and does not implicate disciplinary procedures. (ECF No. 21 at 25.) The Court agrees. "[U]nder New York law, the termination of a public employee based on the employee's failure to satisfy a qualification of employment unrelated to job performance, misconduct, or competency does not implicate the disciplinary procedures set forth in N.Y. Educ. Law §§ 3020, 3020-a." *Broecker*, 585 F. Supp. 3d at 318. As discussed above, the COVID vaccine was "a lawful condition of employment." *Id.* at 316. Thus, the

16

plaintiffs were not entitled to § 3020-a hearings before the defendants terminated them when they refused to get the vaccine. *See id.* at 319 ("[B]ecause the Court finds that receiving a vaccination against COVID-19 is a condition of employment for NYC DOE employees, the NYC DOE need not pursue the disciplinary procedures contained in New York Education Law Section 3020-a . . . prior to terminating NYC DOE employees due to their noncompliance with the Vaccination Mandate.").

To the extent the plaintiffs' due process claims are based on something besides the § 3020-a hearing, their claims nevertheless fail. "To determine whether a plaintiff was deprived of property without due process of law in violation of the Fourteenth Amendment, [a court] must first identify the property interest involved. Next, [it] must determine whether the plaintiff received constitutionally adequate process in the course of the deprivation." *Hurley*, 2025 WL 2711471, at *10 (quoting *O'Connor v. Pierson*, 426 F.3d 187, 196 (2d Cir. 2005)). "Procedures provide constitutional due process where there is 'a pre[-]termination opportunity to respond, coupled with post-termination administrative procedures as provided by [state] statute.'" *Id.* (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 547–48 (1985)). "When . . . a [tenured] public employee is terminated, procedural due process is satisfied if the government provides notice and a limited opportunity to be heard prior to termination, so long as a full adversarial hearing is provided afterwards." *Id.* (quoting *Locurto v. Safir*, 264 F.3d 154, 171 (2d Cir. 2001)).

The plaintiffs' tenured positions constitute protected liberty or property interests for purposes of a due process claim. *See id.* ("Plaintiff states a protected liberty or property interest: her tenured employment at DOE."); *Locurto*, 264 F.3d at 171 (plaintiffs "possessed a constitutionally protected property interest in their tenure as public employees, terminable only

17

for cause") (citing *Gilbert v. Homar*, 520 U.S. 924, 928–29 (1997)).  However, the plaintiffs received sufficient process.  They asked for exemptions through the DOE database in September 2021.  (ECF No. 7 ¶¶ 26, 37.)  Although the DOE denied their requests, it also advised them that they could appeal the denial within one school day and gave them instructions for appealing.  (ECF No. 8 at 7, 29.)[8]  Both plaintiffs also filed Article 78 proceedings in New York State Supreme Court after their terminations, which were dismissed on procedural grounds.  *See Garry et al. v. Adams et al.*, Index No. 801003/2023E (Sup. Ct. Bronx Cnty); *Miraglia et al. v. New York City Dep't of Educ.*, Index No. 85062/2024 (Sup. Ct. Richmond Cnty).  The plaintiffs' "ability to request the exemption and appeal constituted an adequate pre-termination opportunity to respond, and [their] ability to pursue Article 78 remedies satisfied the post-termination administrative procedures as provided by state statute for [them] to have received due process."  *Hurley*, 2025 WL 2711471, at *10 (citation modified); *see also Broecker*, 585 F. Supp. 3d at 314 ("Plaintiffs, having received multiple notices regarding the Vaccination Mandate and after being notified of the applicable dates, procedures, and consequences regarding continued noncompliance with the Vaccination Mandate, could still have sought relief through an Article 78 proceeding in New York state court.").

Accordingly, the plaintiffs' due process claims are dismissed.

#### f.  Stigma Plus

The plaintiffs bring a stigma plus claim related to the "problem code" flag "placed on [their] fingerprints."  (ECF No. 7 ¶ 2; *see also id.* ¶¶ 21, 32.)  The defendants assert that the plaintiff does not allege any elements of a stigma plus claim.  (ECF No. 21 at 33.)  "A stigma

---

[8] The plaintiffs allege in the complaint that they could not appeal because the "portal for submissions was closed."  (ECF No. 7 ¶ 26; *see also id.* ¶ 39.)  But in their opposition to the defendants' motion, they acknowledge that they had one day to appeal, and say that their appeals were "blocked . . . with erratic technological timelines."  (ECF No. 34 at 28.)

18

plus claim has three elements: (1) injury to reputation; (2) the deprivation of a tangible interest or property right; and (3) a lack of adequate process." *Hurley*, 2025 WL 2711471, at *13. "A plaintiff generally is required only to raise the falsity of these stigmatizing statements as an issue, not prove they are false." *Id.* (quoting *Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004)). "The Second Circuit has also stated that '[t]o prevail on a stigma plus claim, a plaintiff must show (1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights.'" *Id.* (quoting *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004)).

The plaintiffs cannot succeed on this claim because they do not dispute the reasons for the issuance of the problem code: that they refused to get the vaccination when it was mandated. (*See, e.g.,* ECF No. 7 ¶¶ 21, 32, 118.) Thus, the "problem code" designation was not false, which "is fatal to [the plaintiffs'] stigma plus claim[s]." *Hurley*, 2025 WL 2711471, at *14; *see also Lynch*, 2025 WL 3731018, at *16 ("Courts in this circuit have consistently held that allegations regarding placement on DOE's problem code database, even without a 'name-clearing hearing,' are insufficient to state a stigma plus claim where no statement about the plaintiff was published outside of the agency.'" (quoting *Fugelsang*, 2025 WL 974276, at *7)). Accordingly, the plaintiffs' stigma plus claim is dismissed.

### g. Equal Protection

The plaintiffs allege that the defendants denied them equal protection "in creating a different due process for New York City employees . . . than employees similarly situated with tenure in New York State but outside of New York City." (ECF No. 7 ¶ 23; *see also id.* ¶ 129.) They cite a New York state court decision, *Garvey v. City of New York*, 180 N.Y.S.3d 476, 480

(N.Y. Sup. Ct., Oct. 24, 2022), in which the court said that the mayor could not exempt certain employees from vaccination orders.  (ECF No. 7 ¶ 128.)  The defendants assert that the plaintiffs' equal protection claim fails because they do not claim that the DOE treated them differently than similarly situated individuals, and do not identify a comparator.  (ECF No. 21 at 27.)

The Court construes the plaintiffs' claim as a selective enforcement claim.  *See Hurley*, 2025 WL 2711471, at *8.  "To prevail on a claim of selective enforcement, a plaintiff must show that: '(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'"  *Clay v. City of New York*, No. 14-CV-9171, 2016 WL 5115497, at *6 (S.D.N.Y. Sept. 9, 2016) (quoting *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 16 (2d Cir. 1999)).  "Courts within this Circuit have held that individuals are similarly situated for purposes of selective enforcement claims when they are similarly situated in all material respects."  *Id.* (quoting *Wright v. NYPD Officer Michael Manetta*, No. 14-CV-8976, 2016 WL 482973, at *3 (S.D.N.Y. Feb. 5, 2016)).  The plaintiffs do not allege any individuals who are "similarly situated in all material respects."  *Id.*  Their vague references to "other tenured employees similarly situated," (ECF No. 7 ¶¶ 8, 83), are insufficient.  They also cite two other teachers — "RF" and "AP" — who either worked unvaccinated in "the rubber room . . . checking people in and out" or "got approved for [a] medical exemption," but do not allege how the plaintiffs were "similarly situated in all material respects" to RF and AP.

Accordingly, the plaintiffs' equal protection claim is dismissed.

### h. Takings Clause

The plaintiffs bring a claim under the Takings Clause; they assert that their tenured status was a property right, and that they were deprived of this right "without just compensation" because the defendants terminated them when they did not receive the COVID vaccine. (ECF No. 7 ¶¶ 98–109.) The Takings Clause provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. "There are two sorts of takings recognized by the law: physical takings and regulatory takings." *McCartney v. City of New York*, No. 23-CV-8232, 2025 WL 2711429, at *5 (E.D.N.Y. Sept. 23, 2025). The plaintiffs do not allege a "physical taking," which "would require 'the government to directly appropriate private property for its own use.'" *Id.* (quoting *Eastern Enters. v. Apfel*, 524 U.S. 498, 522 (1998)) (citation modified). Instead, the plaintiffs allege a regulatory taking. "A regulatory taking can either be categorical in nature, where a regulation completely deprives an owner of *all* economically beneficial use of her property, or a non-categorical taking, which requires an intensive *ad hoc* inquiry into the circumstances of each particular case." *Id.* (citations modified).

Even assuming the plaintiffs' tenured employment is property in the context of a takings claim, this claim nevertheless fails, because "the vaccine mandate [the plaintiffs] challenge did not interfere with that right." *Id.* at *6. The vaccine mandate required the plaintiffs to get vaccinated; it "was wholly unrelated to any regulation of" the plaintiffs' tenure. *Id.* "The fact that Plaintiffs chose not to receive the COVID-19 vaccine and as a consequence of that choice had their employment with the City terminated does not transform the City's mandate into a regulatory taking." *Id.* Accordingly, the plaintiffs' taking clause claim is dismissed.

## II.      State and City Claims

"[A] district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)). The Court dismisses all the federal claims over which it has original jurisdiction, and declines to exercise supplemental jurisdiction over the plaintiff's remaining state and city law claims: fraud in the inducement and violations of New York State Education Law, the NYSHRL, the NYCHRL, and the New York State constitution. *See Kolari*, 455 F.3d at 123 ("Plaintiffs' federal-law claims were eliminated on a motion to dismiss, prior to the investment of significant judicial resources, and we can discern no extraordinary inconvenience or inequity occasioned by permitting the claims to be refiled in state court where they will be afforded a surer-footed reading of applicable law." (citation omitted)).[9]

### CONCLUSION

For these reasons, the defendants' motion to dismiss the plaintiffs' federal claims is granted, and the Court declines to exercise jurisdiction over the plaintiffs' remaining state and city law claims.  Accordingly, the complaint is dismissed with prejudice.

**SO ORDERED.**

s/Ann M. Donnelly

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
        March 12, 2026

---

[9] Because the Court dismisses the plaintiffs' federal claims and declines to exercise jurisdiction over their state and city claims, the Court does not address the defendants' additional arguments regarding the statute of limitations and exhaustion of administrative remedies.  (*See* ECF No. 21 at 5–10.)