UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

——————————————————————————x

DIANNE BAKER-PACIUS and
CHRISTOPHER GARRY,

      Plaintiffs

          DOCKET No. 25-cv-00743 (AMD)(JAM)

  -against-

         **NOTICE OF MOTION TO RECONSIDER**
         **JUDGMENT PURSUANT TO RULE 60B**

THE DEPARTMENT OF EDUCATION OF
THE CITY OF NEW YORK,  DAVID BANKS, Chancellor
and KATHERINE RODI, Director of Employee Relations,

      Defendants

——————————————————————————x

PLEASE TAKE NOTICE that Plaintiffs Dianne Baker-Pacius and Christopher Garry will move

this Court before the Honorable Judge Ann Donnelly, United States District Judge, Eastern

District of New York, at the United States Courthouse located at 225 Cadman Plaza East,

Brooklyn, New York, 11201, on a date and time to be designated by the Court, for an order

reopening this case and giving Plaintiffs the opportunity to submit a Second Amended

Complaint.

Dated: April 12, 2026

       /s/Dianne Baker-Pacius  /s/Christopher Garry

TO: (Via Email)
  NYC Law Department

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

————————————————————————x

**DIANNE BAKER-PACIUS and**
**CHRISTOPHER GARRY,**

　　　　　　　　　　　**Plaintiffs**　　　**DOCKET NO. 25-cv-00743(AMD)(JAM)**

　　**-against-**　　　　　　　　　　**MOTION TO RECONSIDER JUDGMENT**
　　　　　　　　　　　　　　　　　　**PURSUANT TO RULE 60B**

**THE DEPARTMENT OF EDUCATION OF**
**THE CITY OF NEW YORK,  DAVID BANKS, Chancellor**
**and KATHERINE RODI, Director of Employee Relations,**

　　　　　　　　　　　**Defendants**

————————————————————————x

Pro Se PLAINTIFFS DIANNE BAKER-PACIUS and CHRISTOPHER GARRY, ("Plaintiffs")

file this MOTION TO RECONSIDER JUDGMENT PURSUANT TO RULE 60B ("Motion") to

request that the Judgment filed in this case dated March 13, 2026 be vacated and the Court allow

them to proceed with a Second Amended Complaint ("SAC"). The Judgment was based upon a

Memorandum and Order of Judge Ann Donnelly ("Order") which stated multiple errors of law

and outrageous mistakes in the analysis of submitted evidence by pro se Plaintiffs. Plaintiffs also

read the Order and Judgment in another pro se case filed February 13, 2026 and suggest that

Judge Donnelly copied and pasted her Order in the other case, here. The same specious claims of

the same Defendants sued in the Parrino case were sued here, but in this case there were two

Plaintiffs, one with a request for a medical accommodation. Plaintiffs do not believe that Judge

Donnelly gave proper consideration to their arguments, and request that they be given an

opportunity to reopen the case so that they may file a Second Amended Complaint. Judge

1

Donnelly reopened the Parrino case on April 9, 2026. The Judgments in both this case and the Parrino case are attached, **EXHIBITS 1 and 2.**

Judges are usually loathe to deny pro se litigants an opportunity to correct or enlarge their arguments under FRCP Rule 15(a) and as Plaintiffs show below, this Court made a mistake of law and procedure in closing this case before any discovery. Defendants have presented no facts whatsoever in support of their claims. Defendants claimed "undue burden" for the denial of the medical and religious accommodation requests submitted to the Defendants in 2021-2022 Judge Donnelly dismissed the case based upon the statement that the Defendants had an undue burden without any facts to define what that undue burden was, and by doing so, fell for the scam arbitration-accommodation process created by Defendants to reach that exact goal. Plaintiffs were denied the justice and fairness they sought when they filed in this Court, and now ask for a reconsideration of the dismissal.

Plaintiffs also provide new information sent to them last week which expose Defendants' unlawful actions relevant to the denial of Plaintiffs' due process rights and right to accommodations. **EXHIBIT 3**, attached. Because of the clear error on the face of the record, Plaintiffs file for reconsideration of the dismissal of their Amended Complaint as a matter of law and justice.

On p. 7-8 of the Order Judge Donnelly incorrectly reviewed the filing history of this case. Plaintiffs' Complaint was filed on February 10, 2025, with one Defendant, the Department of Education of the City of New York. (ECF No. 1.) Before the Defendant Answered, Plaintiffs filed an Amended Complaint wherein they added two Defendants, Chancellor Melissa Aviles-Ramos and Katherine Rodi, Director of Employee Relations and the person in charge of the Problem Code database and implementation. (ECF No. 7.)  On July 21, 2025, the defendants

2

moved to dismiss the complaint. (ECF No. 19.) Judge Donnelly stopped there. Why is unclear, but her Order may be the answer, as she seems not to have read the Opposition papers submitted, with supporting EXHIBITS 14-20. Exhibit O shows the Vacancy posting for remote teaching jobs at the Department of Education that Defendants hoped no one inside the DOE saw. Not only did the Defendants have reassigned employees in a "rubber room" or at home in every borough, but they also have an active remote curriculum for children unwilling or, unable to go into schools during and after the pandemic. Giving any of these accommodations were available and appropriate for Plaintiffs, but the Judge's Order cut this information off from consideration, exactly as Defendants planned. Plaintiffs submitted the Opposition papers on October 15, 2025 as ordered, but re-submitted these same papers on Oct. 20, with proof that they had uploaded on Oct. 15, 2025 as the pro se link did not docket the papers. Defendants' Reply was docketed as #36 on 11/26/2025. On 3/12/2025 Judge Donnelly's Memorandum and Order was filed dismissing all Federal claims and declining to exercise jurisdiction over the Plaintiff's remaining state and city law claims. The Clerk's Judgment, dismissing the complaint with prejudice, was filed and docketed on 3/13/2026.

After reviewing the Order, Plaintiffs believe that Judge Donnelly did not read their Opposition to Defendants' Motion To Dismiss because of the multiple errors that Judge Donnelly made in her Order. The Order is untenable and is based upon irrelevant and stale caselaw cited by Defendants. Thus Plaintiffs are submitting a Rule 60B to reconsider this decision and request to file a Second Amended Complaint as a matter of justice. (Rule 15a).

Another reason for this request is the shocking replication, briefly mentioned above, almost word-for-word, of the Memorandum and Order filed on February 13, 2026 in the case of Elizabeth Parrino v The Department of Education of the City of New York (1:24-cv-08892). The

3

request for an Amended Complaint was granted by Judge Donnelly and the case was reopened on April 9, 2026. Judge Donnelly used the same text she signed her name to on February 13, 2026 as she did on March 12 2026 one month later in this case. The Judgment in Parrino is the same as the Judgment here. On March 13, 2026 Plaintiff Parrino submitted a Rule 60B Motion to request reconsideration of the Judgment, and time to submit an Amended Complaint. Defendants in the Parrino case – same as in this case -filed an Opposition on 4/3/2026, then Plaintiff Parrino submitted a REPLY on 4/ 9/2026.  The same day, Judge Donnelly granted Plaintiff Parrino her request to Amend her Complaint: ""Rule 60(b) allows the Court to relieve a party from an order in certain circumstances, including '(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence...; (3) fraud..., misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.'" *Ulanov v. New York State Bd. of Elections*, No. 22-CV-193, 2022 WL 767865, at *1 (E.D.N.Y. Mar. 14, 2022) (quoting Fed. R. Civ. P. 60(b)). "Since 60(b) allows extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances." *Id.* (quoting *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986)).

Plaintiffs Baker-Pacius and Garry in this matter request that Judge Donnelly see their Rule 60B as in need of extraordinary judicial relief too, and validate the six circumstances she listed for re-opening the Parrino case by doing the same here, pursuant to Rule 15(a). This case and Parrino's case have similar facts and procedural and substantive circumstances, except for the addition of Plaintiff Garry's medical accommodation requests, which still have the same denial

4

of accommodation for no valid reason. This case should be reopened for all these reasons as well as the reasons argued below.

In the case of Matthew T. Murphy v New York Police Department and City of New York, (23-cv-11235), the Court found that Murphy sufficiently pled a disparate treatment claim on a theory of his employer's failure to accommodate his religious beliefs which conflicted with an employment requirement. The Court found that he had told his employer about his beliefs, and he was disciplined with termination for his failure to comply with the conflicting employment requirement. The City's argument was similar to the one used for Plaintiffs here, namely that Murphy was terminated for failure to meet a lawful condition of his employment, and therefore he was not "disciplined" for purposes of the third prong of the pleading burden for failure-to-accommodate claims. Judge Garnet in the Southern District disagreed:

"The City's argument relies wholly on inapposite law, including cases which have merely determined that vaccination is a lawful condition of employment in the context of due process challenges. *See* Dkt. No. 23 at 7 (citing portions of *Kane v. DeBlasio,* 623 F. Supp. 3d 339, 363 (S.D.N.Y. 2022)) and other cases holding that the City's termination of certain employees who failed to comply with a vaccination requirement-a condition of employment---comported with due process). In the context of Title VII failure-to-accommodate claims, the City's argument that termination is not discipline "is just flat wrong." *Rizzo,* 2024 WL 3274455 at *3; *see also Scodtt v. City of New York,* No. 1:24-CV-02132 (MKV), 2025 WL 2530560, at *6 (S.D.N.Y. Sept. 3, 2025) (adopting *Rizzo's* holding and noting that "[n]umerous courts in this Circuit have concluded the same"). Rather, "[a]s courts in this Circuit have explained, a plaintiff's complaint that [his] defendant-employer ... terminated [his] employment because [he] did not take the required COVID-19 vaccine due to conflicting sincerely held religious beliefs is 'sufficient to plead the final element of the *prima facie* case of religious discrimination for failure to accommodate.'" *Mumin* v. *City of New York,* 760 F. Supp. 3d 28, 46 (S.D.N.Y. 2024) (quoting *Jackson* v. *NY State Off of Mental Health,* No. 23-CV-04164 (JMA), 2024 WL 1908533, at *6 (E.D.N.Y. May 1, 2024)).

Plaintiffs here argue that this argument and the conclusions reached apply also to Plaintiff Garry's medical accommodation request. Defendants' claims make no sense. They make the argument that the terms and conditions of employment for both Plaintiffs were changed, and then both Plaintiffs failed to meet the new criteria, so both had to be

5

punished for misconduct with a Problem Code permanently placed on their fingerprints for not complying with (1) giving up her sincere religious beliefs (Baker-Pacius); (2) harming or killing himself by getting vaccinated with the COVID vaccine.(Garry).

This is the spot this Court has placed the Plaintiffs,  is absurd.

In the case discussed here, Defendants grossly mischaracterize controlling law. The decision by the Second Circuit in Kane v. De Blasio, 19 F.4th 152 (2d Cir. 2021), held that plaintiffs not only stated viable free exercise claims but were likely to succeed and entitled to  preliminary injunctive relief. More recently, in *New Yorkers for Religious Liberty, Inc. v. City of New York*, 125 F.4th 319 (2d Cir. 2024) ("NYFRL"), the Second Circuit also reversed dismissal of two plaintiffs' claims, holding they plausibly pleaded free exercise violations. In this matter, Plaintiffs have argued that Defendants have pursued for many years a scheme of religious and medical discrimination spanning all City agencies, including the Department of Education, precisely the case where Rule 15 liberal amendment standard should apply.

Also, this Court reopened the Parrino case based on the same arguments, thus should reopen the matter here with Plaintiffs Baker-Pacius and Garry. It is a commonly accepted principle that leave should be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Ricciuti v. N.Y.C. Transit Authority*, 941 F.2d 119, 123 (2d Cir. 1991). Plaintiffs have asserted many viable claims and facts to support them in their Amended Complaint, and should be given a chance to revise the AC and put the new information recently received (see below) into the Second Amended Complaint. Their arguments about the Problem Code and Katherine Rodi's statements (AC, EXHIBITs 8, 13; OPPOSITION P, Q, R)show malicious intent on the part of the Defendants. Scheinman's LWOP (AC EXHIBIT 7) is, by definition from the US Supreme Court, "retaliatory

discrimination" *Burlington Northern and Santa Fe Railway Company v Sheila White,548 US 53 (2006), dkt. No. 05-259;* (The Supreme Court unanimously agreed that White suffered retaliatory discrimination when she was reassigned to less desirable duties and suspended without pay. Though the duties were within the same classification and the pay was eventually reinstated, the action was nevertheless sufficiently harsh to constitute retaliatory discrimination.")

Plaintiffs propose a Second Amended Complaint that exposes a two-track system that was clearly unconstitutional. Defendants established one track for employees whose beliefs qualified under arbitration standards (the same ones found unconstitutional in *Kane*), and a separate "Citywide Panel" track for others. This created a fundamental constitutional problem: the arbitration policy required accommodation if religious beliefs qualified under the discriminatory standard (in which case employees "shall remain on payroll" regardless of hardship), while the Citywide Panel routinely denied similarly situated employees on alleged "undue hardship" grounds. So hundreds of similarly situated employees were accommodated at various agencies while Plaintiffs were not. The only difference was whether their beliefs qualified under the discriminatory arbitration standards.

Yet Defendants and this Court have stood by the arbitration policy, despite its untenable and unconstitutional procedures. Under *Masterpiece Cakeshop v. Colorado Civil Rights Commission*, 138 S.Ct. 1719, 1730 (2018), failure to disavow discriminatory standards defeats neutrality and triggers strict scrutiny. Plaintiffs should be granted their Second Amended Complaint to enlarge their causes of action on religious and medical discrimination and Defendants' failure to accommodate.

Last week, Plaintiffs were sent unredacted emails from 2021with the title "RE: Urgent Need for Help--UFT Accommodation Process" (**EXHIBIT 3**) involving various members of the NY City

7

government, DOH, and Steve Banks. These emails show the focus of this group was to help

arbitrators deny the appeals made to them by unvaccinated employees of the City of New York

who refused the COVID vaccine due to their beliefs against the use of fetal cells, and/or their

Pope or religious leader opposed abortion. Here is a quote from Steve Banks:

"Now that the UFT exemption requests have
been coming in for several days and the cases
have been reviewed at the DOE, it turns out
that upwards of 2/3 of the exemption requests
are religious not medical. But there is a medical
aspect to the religious requests that I could use
some help on. Many of the religious claims cite
that fetal tissue and/or certain animal products
were used in the research, development,
and/or actual formula for the COVID vaccines.
Since many of these cases are going to labor
arbitrators, there is a need for factual
information for the arbitrators to reference. It
would be very very helpful if we could get a
document signed off on by a City Doctor that
essentially makes the argument as to why this
is BS. The purpose of the document would be
for the arbitrators to reference, and I would vet
it with the UFT first. So I'm looking for basically
a point by point analysis of why the potential
claims that taking this would violate the rights
of someone who religiously opposes abortion
and/or consumption of certain animals is not
consistent with the science of the virus. In
some areas, there may be a distinction
between the 3 brands of vaccine and I think as
long as one is available the claim should also be
denied.
Is this something you guys could pull together
by late morning tomorrow?
Thanks,

Steven Banks
First Deputy Commissioner & General Counsel
NYC Office of Labor Relations
22 Cortlandt Street, 14th Floor
New York, NY 10007
(212) 306-7238"

Please note that the email uses the term "exemption", and the purpose is to create a foolproof way to deny religious exemptions/accommodations brought before the labor arbitrators who worked for Martin Scheinman and his Company, the Scheinman Arbitration and Mediation Services. The memo created by the people in these emails are directly attacking medical and religious beliefs in order to deny accommodations and declare "undue burden". What is most shocking is the collaboration of DOH Commissioner David Chokshi, City government and Steve Banks in the creation of a "UFT Accommodation Process" designed to deliberately deny all appeals submitted to them.  All appeals were denied by the Scheinman labor panels.

 "When there is no plausible explanation for religious discrimination other than animus, it is subject to strict scrutiny, regardless of whether the government employer admits that its actions were motivated by hostility to certain religions." (JANE DOES et al., v BOARD OF REGENTS OF THE UNIVERSITY OF COLORADO et al., No. 22-1027, U.S. Court of Appeals D.C. No. 1:21-CV-02637-RM-KMT., May 7, 2024). See Complaint, ¶36, p. 12. The fact that there are no actions of the Citywide Panel that could be aligned with Title VII , Human Rights Law, and *Groff v Dejoy*, is troublesome, but not enough, it seems, for either Defendants or this Court to worry about or even pay attention to.

These emails in **EXHIBIT 3** support a predetermined anti-exemption approach. The strongest line is Steven Banks asking for a doctor-signed document to tell arbitrators why the soon-to-be fired appellants must be denied any claims about fetal cells (see "religious claims were "BS."")). The City was not neutrally evaluating accommodation requests, but was instead developing advocacy material to defeat Plaintiffs here and similarly situated in other cases.

9

The emails support a lack of neutrality toward medical need and religious beliefs. The emails focus on rebutting objections about fetal tissue and animal products, and even discuss asking employees whether they used medications tied to the same concerns. Thus the review process was not a sincere, individualized accommodation review, but an effort to discredit certain medical conditions and religious beliefs.

The emails support pretext. If the City says requests were fairly reviewed on an individualized basis, this email chain shows otherwise. The emails suggest that the senders were developing a citywide strategy and memo for negotiations, hearings, and arbitrators before or during the process publicly promoted to potential appellants and dissenters to the COVID Vaccine Mandate (CVM).

The emails support  a First Amendment/as-applied theory. The chain suggests decision-makers were examining the content and acceptability of medical and religious objections, rather than just sincerity or operational feasibility. The process was hostile or non-neutral as applied.

Medical conditions received a somewhat more lenient process for accommodations. See **EXHIBIT 4** issued September 10 2021 by the UFT Press Office. Sadly, the Defendants did not comply with giving those who claimed medical conditions, a non-classroom assignment.

For the Second Amended Complaint and the record evidence, Plaintiffs could use the many other specific facts currently available showing animus and double standards, such as City officials sending out guidance encouraging categorical denial of accommodations for Catholics, Jews, Buddhists, and others based on the content of their beliefs. This Court should not have dismissed this case before discovery, considering the plethora of factual evidence Plaintiffs have submitted in support of their claims – EXHIBITS 1-13 in the Complaint and L-R in the Opposition To the Defendants' Motion To Dismiss. At the pleading stage, the Court must accept Plaintiffs' factual

10

allegations as true and draw all inferences in Plaintiffs' favor. *Ricciuti*, 941 F.2d at 123–24

(reversing lower court's dismissal and holding "a plaintiff is not required to prove his case at the

pleading stage. Indeed, 'the pleading of evidence should be avoided.'").

The Judge's allegiance to the Defendants' claims against Plaintiffs' arguments for

accommodations was not based on fact or circumstance and was unfair to Plaintiffs.

Indeed, Judge Donnelly deliberately nullifies Plaintiffs' claims to an *as-applied* challenge and

concludes that they really meant a facial challenge to the CVM. Plaintiffs never did that. For

example, Plaintiff Baker-Pacius' clearly argues that she was claiming an *as-applied* challenge

and not a facial dissent; ¶3, Amended Complaint: "Plaintiffs complain here not about the COVID

Vaccine Mandate ("CVM") itself, but the deprivation of their Constitutional rights in the lawless

*implementation of CVM* in the City of New York by the Defendants acting under color of law."

(AC, p. 2).

Yet Judge Donnelly deliberately misconstrues Plaintiff's claim to make it into a facial challenge

to the CVM so she can dismiss Plaintiff's Establishment Clause challenge and all the causes of

action of both Plaintiffs:

"Thus, "binding authority" citing the "long history of vaccination requirements in this country
and in this Circuit" warrants dismissal of Baker-Pacius's facial Establishment Clause challenge.
*Lynch v. Dep't of Educ. of City of New York*, No. 24-CV-7795, 2025 WL 3731018, at *10
(E.D.N.Y. Dec. 26, 2025) (collecting cases).
Accordingly, the plaintiff's First Amendment claims are dismissed."

This conclusion is an error of law. In the case cited by Judge Donnelly, *Lynch v Dept. of Educ.*

*24-cv-7795,* in the R&R written by Magistrate Judge Joseph Marutollo (and accepted in full by

the District Court Judge Gujarati):

"…to the extent Plaintiff brings a facial Free Exercise Clause and a facial Establishment Clause
challenge to the DOE Vaccine Mandate, such claims should be dismissed. But to the extent
Plaintiff brings as-applied Free Exercise Clause and Establishment Clause challenges to the DOE

11

Vaccine Mandate, these claims should survive Defendants' motion to dismiss." (Dkt No. 60, pp. 14-15).

And, on p. 16 Magistrate Judge Marutollo wrote this:

"…the Court of Appeals held that the vaccine mandate as applied to the challengers was subject to strict scrutiny because it was neither neutral nor generally applicable. *Id.* at 169. The exemption procedures were not neutral because they allowed examiners to inquire into "the validity of particular litigants' interpretations" of their religious beliefs. *Id.* at 168. Specifically, the DOE's exemption standards provided that exemptions should be denied when "the leader of the religious organization has spoken publicly in favor of the vaccine." *Id.* But denying an applicant's request for a religious exemption "based on someone else's publicly expressed religious views — even the leader of her faith — runs afoul of the Supreme Court's teaching that '[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds.'" *Id*. at 168 (quoting *Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989))."

Magistrate Judge Marutollo wrote: "The Complaint plausibly alleges that Plaintiff's claim received review under only the Arbitration Award standards, which the Second Circuit has held likely violates the First Amendment because those standards are not neutral nor generally applicable as-applied. *Kane I, 19 F.4th at 168-69; NYFRL, 125 F.4th at 334.*" (R&R, p. 19)

Like Plaintiff Lynch, Plaintiffs Baker-Pacius and Garry both complained about the *as-applied* challenge to their forced leave without pay (LWOP),  subsequent termination, and charge of misconduct in October 2021 (placement on the Problem Code is disciplinary). They both were found guilty of misconduct ***before*** they had a chance to apply for a reasonable accommodation. (*emphasis added*). Why Judge Donnelly used the Lynch case is unknown. Plaintiff Lynch is proceeding to discovery, an Amended Complaint, and possible settlement.

Yet this Court agreed with Defendants' arguments even though no facts were submitted by them that validated any of their arguments. On p.  11 of the Memorandum and Order, Judge Donnelly wrote: "The defendants argue that her Free Exercise Clause claim "is foreclosed by Second Circuit precedent conclusively determining that the Vaccine Mandate is neutral and generally

12

applicable," and that her Establishment Clause claim fails because the plaintiff does not allege that the vaccine mandate "advanced or inhibited religion or showed preference to any particular religion." (ECF No. 21 at 21–23.)"

This is false. See AC, ¶¶3, 71, 77, 79.; EXHIBITS 1-13, Complaint.

Another false entry in Donnelly's Order is on p. 4, where she wrote : "On November 28, 2021, the Second Circuit decided *Kane v. De Blasio*, 19 F.4th 152 (2d Cir. 2021), which, according to the plaintiffs, resulted in the arbitration award being "thrown out, and the LWOP process [being] designated 'unconstitutionally unsound.'" (ECF No. 7 ¶ 70.). A review of ECF no. 7 ¶70 has the following:

"The specific details for the granting of religious exemptions and medical accommodations that were cited in the Award of Martin Scheinman were considered the "challenged criteria" and "**constitutionally unsound**" by the Court of Appeals in the case Kane/Keil v The City of New York (21-cv-2678) on November 28, 2021. His Award was thrown out, and the LWOP process was designated "**constitutionally unsound**" as a matter of law." (p. 20)

How and why Judge Donnelly misquoted Plaintiffs is unexplained.

Also unexplained is the Judge's shocking statement on p. 15-16 of the Order, "In any event, Baker-Pacius was not seeking an accommodation. She was seeking a **blanket exemption** from the vaccination requirement". This is not true. In Plaintiff Baker-Pacius''s Complaint, ¶3, p. 2 Plaintiff wrote:

" Defendants engaged in widespread religious discrimination in implementing its vaccine mandates by discarding due process rights outright, and adopting a facially discriminatory religious accommodation policy that conditioned an exemption on membership in a favored religion."

In AC EXHIBIT 2, an email from the employer's online database SOLAS, uses "exemption" and "accommodation" interchangeably. In EXHIBIT 10, AC, is the following:

"On 11/28/21, United States Court of Appeals for the Second Circuit merit panel concluded :

13

"It is, of course, true that the citywide panel must abide by the First Amendment. By ordering the citywide panel's proceedings to abide by other applicable law, the Motions Panel Order does not (and could not) suggest that the First Amendment is somehow inapplicable to those proceedings." **It also reaffirmed that a fresh consideration of people's request for religious accommodation**. In addition to the First Amendment such consideration shall adhere to the standards established by Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, and the New York City Human Rights Law." [emphasis added]

Plaintiffs wrote, "The Panel set up by Martin Scheinman and the process he created was thrown out by the Federal Judge in the Kane-Keil cases (21-CV-7863; 21-CV-8773) on November 28, 2021, because the process used to implement the CVM was "constitutionally unsound". See **EXHIBIT 10,** Court Order, p. 23. As Scheinman's Appeal Process was thrown out as unconstitutional, LWOP was also invalid as a matter of Law. Amended Complaint, **EXHIBIT 10, ¶**80. This Court recognized the lawless tactics used by Defendants to terminate Plaintiff, but the Order shows that Judge Donnelly refused to recognize this fraud on Federal rights and public employment law in New York City.

The Citywide Panel did not respect Constitutional Law, either. See:

**The City of New York and the NYC Department of Education Never Intended on Honoring Requests For Religious Exemptions From Getting the COVID Vaccine By Municipal Workers**
https://advocatz.com/2025/05/28/the-city-of-new-york-and-the-nyc-department-of-education-never-intended-on-honoring-requests-for-religious-exemptions-from-getting-the-covid-vaccine-by-municipal-workers/

Additional recently released information proves the unconstitutional processes used by the Defendants to deny all Department of Education employees who appealed their religious exemptions/accommodations denials: in the Deposition of Katherine G. Rodi by Attorney Austin Graff, posted on the docket in the case of Lorraine Masciarelli in this Court (24-CV-7553-CBA-VMS, Docket #76, filed 5/14/25) p. 22 Graff asked Ms. Rodi:

14

"Q. So regardless of what religious belief the person had, it was going to be denied no matter what?
MS. LINNANE: Objection. You can answer.
A.Yes."

This same disregard for any of the appeals submitted to Defendants can be seen on pp. 25-27, 29, 40, 43, 53, of this Transcript.

The Citywide Panel was an appeal panel that used the word "undue burden" (sometimes they used "did not meet the criteria") but nonetheless intended to deny almost everyone who submitted an exemption/accommodation. The reviewers' intent was malicious and arbitrary. The word "undue burden" was used as a pretext to cover up the Defendants' discrimination and retaliation that powered all the actions of Defendants cited by the Plaintiffs in their AC. Judge Donnelly used the pretext of a fair analysis without details to dismiss Plaintiffs' matter because it seemed that she was focused on quickly disposing of this case. Respectfully, it seems to Plaintiffs here that Judge Donnelly favors the City Law Department representing the Defendants. On this subject, Plaintiffs agree with Plaintiff Parrino's statements in her Rule 60B Motion.

Methods of proving that an employer's reason for taking an adverse employment action is false include:

- A significant contradiction between yearly performance evaluations, and the proffered non-discriminatory reasons. *Perfetti v. First Nat. Bank of Chicago,* 950 F.2d 449, 456 (7th Cir.1991), cert. denied, 505 U.S. 1205, 112 S.Ct. 2995, 120 L.Ed.2d 871 (1992) ("If at the time of the adverse employment decision the decision-maker gave one reason, but at the time of the trial gave a different reason which was unsupported by the documentary evidence the jury could reasonably conclude that the new reason was a pretextual after-the-fact justification."

- An absence of contemporaneous evidence of the alleged basis for the adverse action. For example, the Seventh Circuit noted in *Emmel v. Coca-Cola Bottling Co. of Chicago*, 95 F.3d

15

627, 634-35 (7th Cir. 1996): "The jury apparently concluded from the total absence earlier of the justification Coca-Cola would later offer at trial that the justification had been concocted in preparation for trial to fit the available facts.  In other words that it was pretextual."

- Inconsistent or changing explanations for the adverse action.  For example, in Jolly v. Northern Telecom Inc., 766 F. Supp. 480, 493-94 (E.D.Va. 1991), the court held: "Although the defendant then offered a multiplicity of reasons to justify its action, the plaintiff had little trouble proving that none of these explanations was worthy of any credence. To be sure, Jolly did not have too onerous a task, as the defendant's various personnel told so many stories, so totally inconsistent with each other, that they had lost all credibility by the conclusion of the proceedings. Put simply, NTI took more positions than a gymnast on a trampoline."

- Additional case authorities about shifting explanations include:

o *E.E.O.C. v. Sears Roebuck and Co.*, 243 F.3d 846, 852-53 (4th Cir. 2001)("A factfinder could infer from the late appearance of Sears's current justification that it is a post-hoc rationale, not a legitimate explanation of Sears's decision not to hire" plaintiff.)

o Domiguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 432 (1st Cir. 2000) (A company may have several legitimate reasons to dismiss an employee. But when a company, at different times, gives different and arguably inconsistent explanations, a jury may infer that the articulated reasons are pretextual.")

o *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1167 (6th Cir. 1996) ("An employer's changing rationale for making an adverse employment decision can be evidence of pretext.")

o *Perfetti v. First Nat. Bank of Chicago*, 950 F.2d 449, 456 (7th Cir. 1991), cert. denied, 505 U.S. 1205 (1992) ("If at the time of the adverse employment decision the decision-maker gave one reason, but at the time of the trial gave a different reason which was unsupported by the

16

documentary evidence the jury could reasonably conclude that the new reason was a pretextual after-the-fact justification.")

- The falsity of the explanation can give rise to an inference that the employer is dissembling to cover up an ulterior purpose. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000); *see St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502,511 (1993) ("The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may … suffice to show intentional discrimination."); *Stratton v. Dep't for the Aging for New York*, 132 F.3d 869, 880-81 (2d Cir. 1997) (holding that evidence of an employer's false explanation for employment action supported the jury's finding of unlawful pretext). In the criminal context, courts frequently refer to false exculpatory statements as evidence of consciousness of guilt. *See, e.g., United States v. Reyes*, 302 F.3d 48, 56 (2d Cir.2002) ("[I]t is reasonable to infer guilty knowledge from [the defendant's] false exculpatory statement."). These inferences are "consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt." *Reeves*, 530 U.S. at 147 (internal quotation marks omitted).

Thus Plaintiffs, the Court of Appeals, Katherine Rodi's testimony, and **EXHIBIT R** all support the argument here that Plaintiffs were applying for medical and religious accommodations, not just exemptions, that the terms were used interchangeably, and no one was hearing them. In the Order, Judge Donnelly went along with the unconstitutional Scheinman Award so that she could justify the suspension without pay and termination without basis in law or rule.

Shockingly, Footnote 7 on p. 15 of the Order states "Baker-Pacius argues that "[e]very other tenured educator in the State whether vaccinated or not, were given accommodations such as masks and testing," (ECF No. 7 ¶ 129), but does not allege that she asked for these

17

accommodations.". (In the Parrino Order the footnote is No. 6, p. 10). First, Plaintiff was highlighting the fact that all public education employees *outside of New York City* were never subjected to a COVID VACCINE MANDATE (CVM) similar to the NYC CVM.  Also, Judge Donnelly made a rush to judgment and never inquired about whether or not Plaintiffs here made any attempt to mask and test or inquire about these options. Judge Donnelley's conclusion is baseless, yet she held Plaintiffs accountable for never making any inquiries about this, despite no knowledge whether this was true.

In the Transcript of Katherine G. Rodi cited above p. 2, Ms. Rodi testified that no masking or testing was allowed if the employee was unvaccinated. It was a well-known fact that the NYC DOE refused the masking and testing route. If you were not vaccinated, you could not be in a school building. Period. However, NYC DOE employees who were granted exemptions/accommodations, and given a place to sit *on salary* while the CVM was in place. See Complaint, p. 32:

**New Rubber Rooms Pop Up Throughout NYC To Warehouse Unvaccinated Employees Who have Won medical or Religious Exemptions**
**https://nycrubberroomreporter.blogspot.com/2022/03/new-rubber-rooms-pop-up-throughout-nyc.html**

In her Complaint, Plaintiff made clear that she wanted a religious exemption/**accommodation.** The Order made a reversible error in agreeing with the Defendant in denying Plaintiff's request for a religious exemption/accommodation on the basis of "undue hardship" without any particulars required by a recent decision in Groff v DeJoy, No. 22-174 (Jan. 13, 2023). If a plaintiff satisfies her burden to allege a prima facie case of religious discrimination, as Plaintiffs did in this case, the burden shifts to the employer "to show that it cannot reasonably accommodate the plaintiff without undue hardship on the conduct of the employer's business."

18

*Philbrook v. Ansonia Bd. of Educ.*, 757 F.2d 476, 481 (2d Cir. 1985), *aff'd and remanded*, 479 U.S. 60 (1986). An accommodation is an undue burden when it is "substantial in the overall context of an employer's business." *Groff v. DeJoy,* 600 U.S. 447, 468 (2023). This, too, is a "fact-specific inquiry," which requires the Court to analyze "all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size, and operating cost of an employer." *Id.* at 468, 470-71.

The Order made a reversible error in not giving the Defendants the burden of proof for declaring "more than a minimal hardship" as the final decision of the Citywide Panel in support of denying Plaintiffs and their medical and religious exemption/accommodation requests. The Defendants did not prove what an "undue burden" was. This was an intentional denial of due process under Human Rights Law, Title VII and Groff v DeJoy that Judge Donnelly did not correctly rule on. Thus Judge Donnelly validated the Scheinman Arbitration Award, the most discriminatory, anti-religious rights arbitration decision ever seen in the history of labor and employment law in New York City and State, (See Amended Complaint, EXHIBIT 6)  required all those people who wanted to refrain from getting vaccinated to hand in "exemptions" to the NYC Department of Education. Employees submitting appeals to the arbitrators assumed that exemptions were accommodations. No one told them otherwise, and they were given no notice that the terms were different in meaning and effect. This looks like entrapment.

Plaintiffs do not belong to the Christian Scientist faith, and their accommodation requests relate to their personal medical needs and religious beliefs. Clearly the criteria prescribed by the Scheinman Award was and is discriminatory, and Scheinman and Defendants showed intent in creating this Award and the Appeals procedure. It was all subterfuge.

19

Indeed, Judge Donnelly's Order did not comment on the fact that Defendants fraudulently misled excellent tenured public employees such as Plaintiffs to their employment doom by creating Rodi's General Committee and the Citywide Panel. New York courts have consistently found that when public employers have any discretion to terminate or change a public worker's employment, the employee is entitled to procedural due process. Plaintiffs, tenured employees of the NYC Department of Education (NYC DOE), have a constitutionally protected property and liberty interest in their continued employment. See Cleveland Bd. of Educ. v Loudermill, 470 U.S. 532, 538 (1985). This interest is created and defined by independent sources such as state law and contract. See Bd.of Regents v. Roth, 408 U.S. 564, 577 (1972); Catterson v. Caso, 472 F. Supp. 833, 838 (E.D.N.Y. 1979) and Federal Laws such as the First, Fourth, and 14th Amendments to the Constitution.

Plaintiffs  relied on the Scheinman Award and were punished for doing that. An arbitrator cannot issue an award where the "award itself violates a well-defined constitutional, statutory or common law of this State". (Matter of New York City Tr. Auth. v. Transport Workers Union of Am. Local 100, AFL-CIO, 99 N.Y.2d 1). Education Law 3020 and 3020-a are considered public policy in New York State, and are considered Constitutional due process when discipline is charged. In fact, Education Law 3020-a clearly defines exactly the hearing procedure needed to honor the due process for tenured employees such as Plaintiffs charged with misconduct, as the Plaintiffs in this case were, when placed into the Problem Code database within Galaxy, the Defendants' budget program.The Defendants' false argument is that anything to do with vaccinations, even alleged misconduct, is somehow excluded from all existing procedures. This is simply absurd.

- Rule 60(b)(1): the  Order ignores the fact that Education Law §3020, §3020-a(2)(a) is

20

generally considered Constitutional, public policy in New York State, and cannot be waived or bargained away. Tenure Law is a federal right to due process that is protected by the Due Process Clause of the U.S. Constitution, gives a property and liberty rights to continued employment, and guarantees no reduction in salary or termination without a due process pre-and post hearing. Plaintiffs in this case are both tenured, senior employees given no disciplinary action before 2021, yet they were charged with misconduct and never received a fair pre-termination hearing.

- The Tenure Law, enacted in 1897, was trashed by the City of New York in order to fire municipal workers without due process during the pandemic. But this violation of law did not make the law disappear. The New York State Legislature codified these laws and this particular procedure in the 1800's, and held on to these due process rights as law for many years, despite countless challenges for change. A Plaintiff can seek redress through Section 1983 if "the Plaintiff asserts the violation of a federal right, not merely a violation of Federal Law." Blessing v. Freestone, 520 U.S. 329, 340(1997.)

- Rule 60(b)(1),(3): In Broecker, the Plaintiffs failed to sustain a claim to due process using Education Law §3020 and §3020-a because there was no mention or pleading on the problem code. This should have allowed Plaintiffs to proceed because there is no res judicata here.

- Rule 60(b)(2): In the case of Sara Coombs-Moreno et al., v the City of New York et al., (Coombs-Moreno v. City of New York, 22-CV-02234(EK)(LB) (E.D.N.Y. Sep. 25, 2024)) Judge Edward Komitee ordered the case dismissed except for a single Plaintiff, Amoura Bryan, who argued against being terminated after she submitted a sincere religious exemption request to the Arbitrators and was denied:

Judge Komitee wrote,

"Additionally, Ms. Bryan pleads that "for exercising her religious practice" — that is, for declining to be vaccinated — she was placed on leave without pay. Id. ¶ 142.

21

These allegations, while highly general, are sufficient at this stage. And the assessment of whether the City could have reasonably accommodated Ms. Bryan without undue hardship is a fact-intensive assessment that cannot be determined from within the four corners of the complaint. See Groff, 600 U.S. at 468.

Therefore, Ms. Bryan's Title VII claim may proceed, but only against certain municipal defendants: the City and the Department of Education (because, as noted above, individuals may not be liable under Title VII).

Plaintiff Bryan Has Alleged a Prima Facie Case of Religious Discrimination Under the NYCHRL.

Like Title VII, the City's Human Rights Law requires a plaintiff to allege a bona fide religious belief to make out a prima facie case of discrimination. Specifically, under the NYCHRL, a plaintiff must demonstrate that "(1) they held a bona fide religious belief conflicting with an employment requirement; (2) they informed their employers of this belief; and (3) they were disciplined for failure to comply with the  conflicting employment requirement." Weber v. City of New York, 973 F.Supp.2d 227, 263 (E.D.N.Y. 2013) (collecting cases).

Ms. Bryan is the only plaintiff who articulates a prima facie NYCHRL religious-discrimination claim. She (a) articulates a bona fide belief in the "biblical practice" of plant-based medicine; (b) pleads that she told her employers about this belief; and (c) alleges retaliation for refusal to receive vaccination. FAC ¶¶ 138-142. These claims meet the threshold for Ms. Bryan to proceed under the NYCHRL at this stage. No other plaintiffs, however, approach even this low pleading bar. See Lugo v. City of New York, 518 Fed.Appx. 28, 30 (2d Cir. 2013) ("While the NYCHRL is indeed reviewed independently from and more liberally than federal or state discrimination claims, it still requires a showing of some evidence from which discrimination can be inferred."); Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).

At the next step of NYCHRL analysis, the burden shifts to the employer "to rebut the presumption of discrimination by clearly setting forth, through the introduction of admissible evidence, legitimate, independent, and nondiscriminatory reasons to support its employment decision." Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 295, 305 (N.Y. 2004). Here, defendants cannot carry that burden. At the motion to dismiss stage, the Court may only consider the facts in the FAC, which pleads that  plaintiff's religion was not accommodated. See FAC ¶¶ 138-42; Davis v. Boeheim, 24 N.Y.3d 262, 268 (N.Y. 2014). Thus, Ms. Bryan's NYCHRL claim may proceed…...against the City of New York and the Department of Education."

Judge Komitee's Order is dated September 25, 2024, and Amoura Bryan has the same claims

concerning a lack of due process as Plaintiffs have in this case.

Also, a decision made by New York Judge Alice Schlesinger in 2007 in the case of Theodore

Smith v NYC Department of Education, Index No.117051/07 is relevant in this argument against

Defendants' Citywide Panel's alleged "due process" where no one was ever seen face-to-face:

"the Education Law mandates arbitration of disciplinary matters such as this. Therefore, the court's role is broadened considerably to include the factors of substantive and procedural due

22

process……Therefore, the question presented is whether the decision here based on an arbitrator's exclusive reading of the record, without seeing or hearing any witness and thereby evaluating their credibility in such a limited fashion, comports with the dictates of due process. I find that it does not. "

Moreover, new precedent in *Health Freedom Def. Fund, Inc. v. Carvalho*, 2024 WL 2873372 (9th Cir. 2024) significantly undercuts the legal foundation of Defendants' justification for the COVID-19 mandate as a lawful employment condition. Additionally, none of the cases cited by Defendants in their Opposition mentioned the Problem Code, a misconduct charge put on the fingerprints of Plaintiffs and any other unvaccinated UFT/CSA member who applied for a religious or medical accommodation/exemption in 2021-2022. None of the six cases dismissed along with Matter of O'Reilly, 42 N.Y.3d  mentioned the Problem Code or that any Plaintiffs were charged with misconduct for applying for an accommodation. Therefore none of these cases had any disciplinary charge as a cause of action. But Plaintiffs here, do, and thus this Court and Defendants are wrong in denying Plaintiffs their rights to a pre-termination 3020-a. See *Kilduff v. Rochester City School District*, 107 A.D.3d 1536, 966 N.Y.S.2d 708 (N.Y. Ct. App. 2013):

"We agree with petitioner that respondents failed to comply with the requirements of Education Law § 3020 (1) when they disciplined petitioner without affording her a hearing pursuant to Education Law § 3020-a. When presented with a question of statutory interpretation, "courts should construe unambiguous language [in a statute] to give effect to its plain meaning" (Matter of DaimlerChrysler Corp. v Spitzer, 7 NY3d 653, 660 [2006]). We agree with petitioner that the plain language of Education Law § 3020 (1) provides that a tenured teacher facing discipline, and whose terms and conditions of employment are covered by a collective bargaining agreement (CBA) that became effective on or after September 1, 1994, is entitled to elect either the disciplinary procedures specified in Education Law § 3020-a or the alternative procedures contained in the CBA. Here, the CBA at issue went into effect on July 1, 2006. Thus, petitioner was entitled to choose whether to be disciplined under the procedures set forth in the CBA or those set forth in section 3020-a, which allowed petitioner to elect a hearing (see § 3020-a [c]). Respondents, however, incorrectly denied petitioner's written request for a section 3020-a hearing. We therefore reverse the judgment, grant the petition, annul the determination, and we direct respondents to reinstate petitioner with back pay and benefits retroactive to the date of her suspension, and to remove all references to the discipline imposed from petitioner's personnel file (see generally Matter of Winter v Board of Educ. for Rhinebeck Cent. School Dist., 79 NY2d

23

1, 9 [1992], rearg denied 79 NY2d 978 [1992]; Matter of Diggins v Honeoye Falls-Lima Cent. School Dist., 50 AD3d 1473, 1474 [2008]). Present — Smith, J.P., Fahey, Carni, Sconiers and Whalen, JJ."

This decision was affirmed by the Court of Appeals in Matter of Kilduff v Rochester City Sch. Dist., 2014 NY Slip Op 08056 [24 NY3d 505], November 20, 2014.

Plaintiffs were never given any due process. They were removed from their salaries and charged by the Problem Code (See Betsy Combier's Declaration and Eric Amato's email, Amended Complaint EXHIBIT 13)  before they were allowed to submit to Scheinman, and *after they* were removed from salary. Clearly, the process should have been reversed.

Plaintiffs' arguments that the terms and conditions  of their employment were never changed and that they were retaliated against hit upon deaf ears both at this Court and in Defendants' papers, because ignoring their causes of action and/or undermining their arguments assist this Court in dismissing this case. Additionally, the Federal Court frowns on dismissal of a cause of action that is successfully pled at the pleading stage, and this Court should recognize Rule 15 in this matter. Rule 15(B)(2) says: "The court should freely give leave when justice so requires."

Plaintiffs request that this Court allow them to file a Second Amended Complaint that this Court may finally hear this case and decide it on its' merits..

Dated:.April 12, 2026

/s/Dianne Baker-Pacius                    /s/Christopher Garry

24

# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
DIANNE BAKER-PACIUS and
CHRISTOPHER J. GARRY,

                    Plaintiffs,                JUDGMENT

           v.                          25-CV-743 (AMD) (JAM)

THE DEPARTMENT OF EDUCATION
OF THE CITY OF NEW YORK,
MELISSA AVILES-RAMOS, Chancellor
and KATHERINE RODI, Director of
Employee Relations,

                    Defendants.
----------------------------------------------------------X

A Memorandum, Decision, and Order of the Honorable Ann M. Donnelly, United States District Judge, having been entered on March 12, 2026, granting the defendants' motion to dismiss the plaintiffs' federal claims; declining to exercise jurisdiction over the plaintiffs' remaining state and city law claims; and dismissing the complaint with prejudice; it is

ORDERED and ADJUDGED that the defendants' motion to dismiss the plaintiffs' federal claims is granted; the Court declines to exercise jurisdiction over the plaintiffs' remaining state and city law claims; and the complaint is dismissed with prejudice.

Dated: Brooklyn, New York                    Brenna B. Mahoney
       March 13, 2026                    Clerk of Court

                                  By:    */s/Jalitza Poveda*
                                       Deputy Clerk

# EXHIBIT 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ELIZABETH PARRINO,

                        Plaintiff,              JUDGMENT

        v.

                              24-CV-8892 (AMD) (JRC)

THE DEPARTMENT OF EDUCATION OF
THE CITY OF NEW YORK, MELISSA
AVILES-RAMOS, Chancellor and
KATHERINE RODI, Director of Employee
Relations,

                      Defendants.
--------------------------------------------------------X

      A Memorandum, Decision, and Order of the Honorable Ann M. Donnelly, United States

District Judge, having been entered on February 13, 2026, granting the defendants' motion to

dismiss the plaintiff's federal claims; declining to exercise supplemental jurisdiction over the

plaintiff's remaining state and city law claims; and dismissing the complaint with prejudice; it is

      ORDERED and ADJUDGED that the defendants' motion to dismiss the plaintiff's federal

claims is granted; the Court declines to exercise supplemental jurisdiction over the plaintiff's

remaining state and city law claims; and the complaint is dismissed with prejudice.

Dated: Brooklyn, New York                     Brenna B. Mahoney
       February 13, 2026                  Clerk of Court

                                    By:   */s/Jalitza Poveda*
                                         Deputy Clerk

# EXHIBIT 3

| | |
|---|---|
| **From:** | Nellie Afshar |
| **To:** | Dave Chokshi |
| **Subject:** | RE: Urgent Need for Help--UFT Accommodation Process |
| **Date:** | Wednesday, September 22, 2021 10:25:11 AM |
| **Attachments:** | Memo_09 21 21 Final.pdf |

Final version for your awareness. No changes from what you saw last.

---

**From:** Dave Chokshi <dchokshi@health.nyc.gov>
**Sent:** Wednesday, September 22, 2021 8:13 AM
**To:** Nellie Afshar <nafshar@health.nyc.gov>
**Subject:** Re: Urgent Need for Help--UFT Accommodation Process

Thanks—looks good


On Sep 21, 2021, at 10:19 PM, Nellie Afshar <nafshar@health.nyc.gov> wrote:


Here is latest version of the memo – includes addition of the list of meds and animal products.

For awareness, we have not been able to verify the list of meds, I asked Jackie if she can track it down w Jay.

---

**From:** Dave Chokshi <dchokshi@health.nyc.gov>
**Sent:** Tuesday, September 21, 2021 8:04 PM
**To:** Nellie Afshar <nafshar@health.nyc.gov>
**Subject:** Re: Urgent Need for Help--UFT Accommodation Process

Thank you!!


Dave A. Chokshi, MD MSc

Commissioner

NYC Department of Health and Mental Hygiene

347-396-4133

---

**From:** Nellie Afshar <nafshar@health.nyc.gov>
**Sent:** Tuesday, September 21, 2021 8:03 PM
**To:** Dave Chokshi <dchokshi@health.nyc.gov>
**Subject:** RE: Urgent Need for Help--UFT Accommodation Process

Yes I'm making those revisions now, and also adding line about Tylenol, advil, etc

Thank you!

---

**From:** Dave Chokshi <dchokshi@health.nyc.gov>
**Sent:** Tuesday, September 21, 2021 8:02 PM
**To:** Nellie Afshar <nafshar@health.nyc.gov>
**Subject:** Re: Urgent Need for Help--UFT Accommodation Process

Nellie, this looks fine to me and no issues with it coming from me. We had to remove the section about pork and animal products? Seemed they wanted it specifically.

Also happened to notice that 'fetal' is misspelled as 'feral' in one place.

Dave A. Chokshi, MD MSc

Commissioner

NYC Department of Health and Mental Hygiene

347-396-4133

---

**From:** Nellie Afshar <nafshar@health.nyc.gov>
**Sent:** Tuesday, September 21, 2021 7:18 PM
**To:** Dave Chokshi <dchokshi@health.nyc.gov>
**Subject:** RE: Urgent Need for Help--UFT Accommodation Process

Commissioner – we're still refining this but here is the current version in case you can review in parallel. On our side – Jane, Celia, Jen Rosen, and PIO reviewed.  Let me know if any issues w this coming from you.

---

**From:** Bray, Jackie <JBray@cityhall.nyc.gov>
**Sent:** Tuesday, September 21, 2021 5:15 PM
**To:** Nellie Afshar <nafshar@health.nyc.gov>; Dave Chokshi <dchokshi@health.nyc.gov>; Celia Quinn Md <cquinnmd@health.nyc.gov>; Jane Zucker <jzucker@health.nyc.gov>; Rebecca Giglio <rgiglio@health.nyc.gov>
**Cc:** 'Anne Mabus' <mabusa@nychhc.org>
**Subject:** RE: Urgent Need for Help--UFT Accommodation Process

Here is the latest draft from OLR who reformatted some.

Happy to merge the edits if useful once I have yours.

*Jackie Bray*
*Pronouns: she/her/hers*

*Deputy Executive Director*
*NYC COVID-19 Test & Trace Corps*
*jbray@cityhall.nyc.gov*
*Cell: 347-453-3697*

---

**From:** Nellie Afshar <nafshar@health.nyc.gov>
**Sent:** Tuesday, September 21, 2021 4:49 PM
**To:** Bray, Jackie <JBray@cityhall.nyc.gov>; Chokshi, Dave (DOHMH) <dchokshi@health.nyc.gov>; Celia Quinn Md <cquinnmd@health.nyc.gov>; Jane Zucker <jzucker@health.nyc.gov>; Rebecca Giglio <rgiglio@health.nyc.gov>
**Cc:** 'Anne Mabus' <mabusa@nychhc.org>
**Subject:** RE: Urgent Need for Help--UFT Accommodation Process

We have edits and I will send your way Jackie

---

**From:** Bray, Jackie <JBray@cityhall.nyc.gov>
**Sent:** Tuesday, September 21, 2021 4:46 PM
**To:** Dave Chokshi <dchokshi@health.nyc.gov>; Celia Quinn Md <cquinnmd@health.nyc.gov>; Jane Zucker <jzucker@health.nyc.gov>; Nellie Afshar <nafshar@health.nyc.gov>; Rebecca Giglio <rgiglio@health.nyc.gov>
**Cc:** 'Anne Mabus' <mabusa@nychhc.org>
**Subject:** FW: Urgent Need for Help--UFT Accommodation Process

Thoughts? Can we close this out?

*Jackie Bray*
*Pronouns: she/her/hers*
*Deputy Executive Director*
*NYC COVID-19 Test & Trace Corps*
*jbray@cityhall.nyc.gov*
*Cell: 347-453-3697*

---

**From:** Bray, Jackie
**Sent:** Tuesday, September 21, 2021 4:46 PM
**To:** Varma, Jay <JVarma@cityhall.nyc.gov>; Steve Banks (OLR) <sbanks@olr.nyc.gov>
**Cc:** Thamkittikasem, Jeff <JThamkittikasem@cityhall.nyc.gov>; Campion, Renee (OLR) <rcampion@olr.nyc.gov>; Siciliano Lauren <LSiciliano2@schools.nyc.gov>; 'Anne Mabus' <mabusa@nychhc.org>; Chokshi, Dave (DOHMH) <dchokshi@health.nyc.gov>; Afshar, Nellie (Health) <nafshar@health.nyc.gov>; 'Jane Zucker' <jzucker@health.nyc.gov>; 'Celia Quinn Md' <cquinnmd@health.nyc.gov>
**Subject:** RE: Urgent Need for Help--UFT Accommodation Process

OK I've added a line about pork, beef, and animal products. DOHMH needs to confirm if the line is accurate.

COH and team – we need your approval on this memo and then we need guidance from you on who at the DOHMH would sign it. I think it should go from dOHMH to OLR officiallu once you are comfortable with it. We are moving fast here on negotiations and hearings on exemptions so wanting to wrap this up today.

Thank you!

*Jackie Bray*
*Pronouns: she/her/hers*
*Deputy Executive Director*
*NYC COVID-19 Test & Trace Corps*
*jbray@cityhall.nyc.gov*
*Cell: 347-453-3697*

---

**From:** Bray, Jackie
**Sent:** Tuesday, September 21, 2021 2:00 PM
**To:** Varma, Jay <JVarma@cityhall.nyc.gov>; Steve Banks (OLR) <sbanks@olr.nyc.gov>
**Cc:** Thamkittikasem, Jeff <JThamkittikasem@cityhall.nyc.gov>; Campion, Renee (OLR) <rcampion@olr.nyc.gov>; Siciliano Lauren <LSiciliano2@schools.nyc.gov>; Anne Mabus <mabusa@nychhc.org>; Chokshi, Dave (DOHMH) <dchokshi@health.nyc.gov>; Afshar, Nellie (Health) <nafshar@health.nyc.gov>; Jane Zucker <jzucker@health.nyc.gov>; 'Celia Quinn Md' <cquinnmd@health.nyc.gov>
**Subject:** RE: Urgent Need for Help--UFT Accommodation Process

+Celia too.

*Jackie Bray*
*Pronouns: she/her/hers*
*Deputy Executive Director*
*NYC COVID-19 Test & Trace Corps*
*jbray@cityhall.nyc.gov*
*Cell: 347-453-3697*

---

**From:** Varma, Jay <JVarma@cityhall.nyc.gov>
**Sent:** Tuesday, September 21, 2021 1:58 PM
**To:** Bray, Jackie <JBray@cityhall.nyc.gov>; Steve Banks (OLR) <sbanks@olr.nyc.gov>
**Cc:** Thamkittikasem, Jeff <JThamkittikasem@cityhall.nyc.gov>; Campion, Renee (OLR) <rcampion@olr.nyc.gov>; Siciliano Lauren <LSiciliano2@schools.nyc.gov>; Anne Mabus <mabusa@nychhc.org>; Chokshi, Dave (DOHMH) <dchokshi@health.nyc.gov>; Afshar, Nellie (Health) <nafshar@health.nyc.gov>; Jane Zucker <jzucker@health.nyc.gov>
**Subject:** Re: Urgent Need for Help--UFT Accommodation Process

Memo ok with me.

Get Outlook for iOS

**From:** Bray, Jackie <JBray@cityhall.nyc.gov>
**Sent:** Tuesday, September 21, 2021 1:56:53 PM
**To:** Steve Banks (OLR) <sbanks@olr.nyc.gov>
**Cc:** Thamkittikasem, Jeff <JThamkittikasem@cityhall.nyc.gov>; Campion, Renee (OLR) <rcampion@olr.nyc.gov>; Siciliano Lauren <LSiciliano2@schools.nyc.gov>; Anne Mabus <mabusa@nychhc.org>; Chokshi, Dave (DOHMH) <dchokshi@health.nyc.gov>; Varma, Jay <JVarma@cityhall.nyc.gov>; Afshar, Nellie (Health) <nafshar@health.nyc.gov>; Jane Zucker <jzucker@health.nyc.gov>
**Subject:** RE: Urgent Need for Help--UFT Accommodation Process

++adding MDs.

Attached is a memo Annie drafted. Obviously need Dave, Jane, and Jay to review and then need to know from OLR whether this works.

*Jackie Bray*
*Pronouns: she/her/hers*
*Deputy Executive Director*
*NYC COVID-19 Test & Trace Corps*
*jbray@cityhall.nyc.gov*
*Cell: 347-453-3697*

---

**From:** Steve Banks (OLR) <sbanks@olr.nyc.gov>
**Sent:** Monday, September 20, 2021 10:08 PM
**To:** Bray, Jackie <JBray@cityhall.nyc.gov>
**Cc:** Thamkittikasem, Jeff <JThamkittikasem@cityhall.nyc.gov>; Campion, Renee (OLR) <rcampion@olr.nyc.gov>; Siciliano Lauren <LSiciliano2@schools.nyc.gov>
**Subject:** Re: Urgent Need for Help--UFT Accommodation Process

+Lauren for awareness and to see if an example or 2 can be provided by the DOE

The first page of the North Dakota document is a little bit more neutral than I was thinking. But the second and third page get to the point. We can go further and make an argument about how even if someone is concerned about fetal cells it should not prevent them from being vaccinated.

Yes the list is good. Because to the extent there are hearings in these cases, the employees can be asked about whether they use or have used those medications.

And yes to a little more time, there is no definitive time limit but I said I'd get the UFT something tomorrow and the idea is that hearings are going to start on Wednesday. If it's later in the afternoon I'm sure that's ok.

On Sep 20, 2021, at 9:56 PM, Bray, Jackie <JBray@cityhall.nyc.gov> wrote:

OK. Need you to weigh in on three things:

1.  Here's a memo from the North Dakota Department of Health. If we created something similar is that what you need? COVID-19_Vaccine_Fetal_Cell_Handout.pdf

2.  The MDs were also batting around the idea of making someone attest to rejecting all the medications on this list and look for proof that they have rejected all of these "sincerely" for some time: https://www.patheos.com/blogs/throughcatholiclen-tested-on-hek-293-is-immoral-goodbye-modern-medicine/

3.  Can you send me some of the letters? Are there phrases that appear in many of them?

And finally, we clearly have very good material here and we also want to give you the best product we can because this will absolutely be subject to litigation and will go far. Is there a way to buy us more than 12 hours overnight?

Thanks,
Jackie

*Jackie Bray*
*Pronouns: she/her/hers*
*Deputy Executive Director*
*NYC COVID-19 Test & Trace Corps*
*jbray@cityhall.nyc.gov*
*Cell: 347-453-3697*

---

**From:** Steve Banks (OLR) <sbanks@olr.nyc.gov>
**Sent:** Monday, September 20, 2021 9:50 PM
**To:** Bray, Jackie <JBray@cityhall.nyc.gov>
**Cc:** Thamkittikasem, Jeff <JThamkittikasem@cityhall.nyc.gov>; Campion, Renee (OLR) <rcampion@olr.nyc.gov>
**Subject:** Re: Urgent Need for Help--UFT Accommodation Process

Yep. Thanks much

> On Sep 20, 2021, at 9:07 PM, Bray, Jackie <JBray@cityhall.nyc.gov> wrote:

OK. Yes. We can get you something and have a shell of something to use from LA County.

Might take till noon or 1pm. that OK?

*Jackie Bray*
*Pronouns: she/her/hers*
*Deputy Executive Director*
*NYC COVID-19 Test & Trace Corps*
*jbray@cityhall.nyc.gov*
*Cell: 347-453-3697*

**From:** Bray, Jackie
**Sent:** Monday, September 20, 2021 8:27 PM
**To:** Steve Banks (OLR) <sbanks@olr.nyc.gov>
**Cc:** Thamkittikasem, Jeff <JThamkittikasem@cityhall.nyc.gov>; Campion, Renee (OLR) <rcampion@olr.nyc.gov>
**Subject:** Re: Urgent Need for Help--UFT Accommodation Process

I have no clue if we can pull this together because this is a "new one" but I will absolutely try. Will circle back later tonight with an update.

Sent from my iPhone

> On Sep 20, 2021, at 8:22 PM, Steve Banks (OLR) <sbanks@olr.nyc.gov> wrote:

> Now that the UFT exemption requests have been coming in for several days and the cases have been reviewed at the DOE, it turns out that upwards of 2/3 of the exemption requests are religious not medical. But there is a medical aspect to the religious requests that I could use some help on. Many of the religious claims cite that fetal tissue and/or certain animal products were used in the research, development, and/or actual formula for the COVID vaccines.

> Since many of these cases are going to labor arbitrators, there is a need for factual

information for the arbitrators to reference. It would be very very helpful if we could get a document signed off on by a City Doctor that essentially makes the argument as to why this is BS. The purpose of the document would be for the arbitrators to reference, and I would vet it with the UFT first. So I'm looking for basically a point by point analysis of why the potential claims that taking this would violate the rights of someone who religiously opposes abortion and/or consumption of certain animals is not consistent with the science of the virus. In some areas, there may be a distinction between the 3 brands of vaccine and I think as long as one is available the claim should also be denied.

Is this something you guys could pull together by late morning tomorrow?

Thanks,

Steven Banks
First Deputy Commissioner & General Counsel
NYC Office of Labor Relations

22 Cortlandt Street, 14th Floor
New York, NY 10007
(212) 306-7238

Sent from the New York City Department of Health & Mental Hygiene. This email and any files transmitted with it may contain confidential information and are intended solely for the use of the individual or entity to whom they are addressed. This footnote also confirms that this email message has been swept for the presence of computer viruses.
<Draft Memo - Religious Exemption DOE_DOHMH v2_JZ v3.docx>

# EXHIBIT 4

UFT.ORG - The United Federation of Teachers

⌂ > **News** > **Press Releases** > Arbitrator rules city must offer non-classroom work to teachers with Covid vaccination medical/religious exemptions

**PRESS RELEASES**

# Arbitrator rules city must offer non-classroom work to teachers with Covid vaccination medical/religious exemptions

Office or remote assignments must be available for vaccinated teachers with suppressed immune systems

*September 10, 2021* │ Press Releases

**Arbitration finding also calls for unpaid leaves with health coverage, along with severance arrangements**

An independent arbitrator has ruled that New York City teachers with certain documented medical conditions must be offered non-classroom assignments. Other staffers reluctant to take the vaccine must be offered either an unpaid leave that maintains their health coverage, or a severance package.

UFT President Michael Mulgrew said, "As a group, teachers have overwhelmingly supported the vaccine, but we have members with medical conditions or other reasons for declining vaccination. After our demand for independent arbitration, the city backed off its initial position that all unvaccinated personnel be removed from payroll, and will offer out-of-classroom work for those with certified medical or other conditions."

"The city has also agreed — based on the arbitrator's determination — to create both a leave process and a severance agreement for other teachers who feel that they cannot comply with the vaccination mandate."

The teacher vaccine mandate is scheduled to go into effect on Sept. 27, 2021. Classes begin Monday, Sept. 13.

The UFT estimates that more than 80% of teachers have already been vaccinated, either through the union's own vaccination program or through other city and state initiatives.

## Medical exemptions

Under the terms of the arbitrator's ruling, teachers and other staff with certain medical conditions that prevent them from being vaccinated, either temporarily or permanently, including certain cancer treatments, must be offered educational and administrative work in non-classroom buildings.

In cases where teachers seek exemptions for medical conditions not on the list, independent arbitrators will decide if the exemption is appropriate.

Teachers who have been vaccinated but whose immune systems are suppressed must also be offered office or remote assignments as long as their medical conditions last.

## Religious exemptions

Exemption requests shall be considered for recognized and established religious organizations and not where the objection is personal, political, or philosophical in nature. Applications for religious exemptions must be documented in writing by clergy or a religious official. Appeals of religious exemption denials will be heard by the same independent arbitrators ruling on medical exemption appeals.

## Unpaid leaves

Teachers who are not vaccinated but for whom medical exemptions are unavailable must be offered unpaid leaves that will last until next September. While their salaries will be withheld, the city will continue their medical insurance coverage.

Such teachers will be returned to their jobs and the payroll if and when they decide to be vaccinated. If they have not been vaccinated by the end of that leave, the system will assume they have resigned.

## Severance

Staff who decline to accept an unpaid leave must be offered a severance package that would include payment for unused sick days, along with health insurance until the end of the school year. They would also be entitled to apply to return to city schools in the future.

Unvaccinated teachers who refuse all options will be subject to the disciplinary process.

## Arbitration and the legal process

Arbitration is a process outside of the court system that is used to resolve differences between parties, often over contract interpretation — in this case a dispute between the UFT and the city over the impact of the Health Department's vaccine mandate on the work of teachers and other staff members.

The arbitration finding does not resolve the underlying issue of whether the city has the legal authority to issue such a mandate for teachers and other city workers. The question of the city's legal authority can only be resolved by the courts. The Municipal Labor Committee, of which the UFT is a member, has brought a suit in Manhattan Supreme Court to resolve that issue.

The arbitration was conducted by Martin F. Scheinman, of Scheinman Arbitration and Mediation Services. **Read the arbitration decision »** (https://drive.google.com/file/d/1NUaMMrvP_1Pe31uX33MEXJgRpietv1EI/view?usp=sharing)